IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| GANDA, LLC, | ) | |
| | ) | Case Number: 1-04-CV-1879-CC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT UNDER RULE 59(e) |
| YANGTZE OPTICAL FIBRE AND CABLE COMPANY and DRAKA TECHNOLOGIES, N.V., | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff moves this Court pursuant to Fed. R. Civ. P. 59(e) to alter or amend its judgment entered July 19, 2005. The judgment dismissed Plaintiff's Complaint without prejudice based upon this Court's alleged lack of personal jurisdiction over the Defendants.

Case law and statutory authority not previously cited to this Court make clear, however, that this Court may assert personal jurisdiction over the Defendants under Fed. R. Civ. P. 4(k)(2) and the worldwide service of process provision contained in Section 12 of the Clayton Act, 15 U.S.C. §22.

In the alternative, Plaintiff submits that the Court's judgment relied upon erroneous facts and that this Court is entitled to assert jurisdiction over these Defendants under a traditional "minimum contacts" analysis focusing purely on the Defendants' contacts with the state of Georgia.

Should the Court determine that the facts surrounding the jurisdictional issue are not sufficiently well developed to enable the Court to decide the jurisdictional question, Plaintiff requests that it be permitted to conduct discovery on the jurisdictional issue.

Finally, should the Court alter or amend its judgment and assert personal jurisdiction over these Defendants, Ganda submits that venue in this forum is proper under the Alien Venue Act, 28 U.S.C. §1391(d).

This Motion is further supported by Plaintiff's Memorandum and Exhibits filed contemporaneously herewith.

Respectfully submitted,

*/s/ James L. Rogers, Jr.*

Robert S. Huestis
(Georgia State Bar #374740)

SWIFT, CURRIE, MCGHEE & HIERS, LLP
1355 Peachtree Street, NE
The Peachtree, Suite 300
Atlanta, GA 30309
(404) 888-6147
and
James L. Rogers, Jr.
(S.C. Bar # 9914)
LEATHERWOOD WALKER TODD & MANN, P.C.
300 E. McBee Avenue, Suite 500
P. O. Box 87
Greenville, SC 29602
(864) 2420-6440

Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I, James L. Rogers, do hereby certified that on this 2nd day of August 2005, I caused a true and correct copy of the foregoing document to be filed with the Clerk of Court via the ECF filing procedure and forwarded via United States Mail and/for electronic transmission to the following:

Thomas M. Byrne
Suzanne M. Alford
SUTHERLAND ASBILL & BRENNAN, LLP
999 Peachtree Street, NE
Atlanta, Georgia 30309-3996

Ira K. Gross
Samual Bosarge Dutton
SULLIVAN & WORCESTER, LLP
One Post Office Square
Boston, MA 02109

I hereby certify this document was prepared in accordance with Court Rule LR 5.1B, ND Ga., in the Courier New (12 point) font.

This 2nd day of August 2005.

[Signature on next page.]

Case 1:04-cv-01879-CC Document 34 Filed 08/02/2005 Page 4 of 4

Respectfully submitted,

*/s/ James L. Rogers Jr.*

Robert S. Huestis
(Georgia State Bar #374740)

SWIFT, CURRIE, MCGHEE & HIERS, LLP
1355 Peachtree Street, NE
The Peachtree, Suite 300
Atlanta, GA 30309
(404) 888-6147
and
James L. Rogers, Jr.
(S.C. Bar # 9914)
LEATHERWOOD WALKER TODD & MANN, P.C.
300 E. McBee Avenue, Suite 500
P. O. Box 87
Greenville, SC 29602
(864) 2420-6440

Attorneys for Plaintiff

1495042v.1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| GANDA, LLC,<br><br>Plaintiff,<br><br>v.<br><br>YANGTZE OPTICAL FIBRE AND CABLE COMPANY and DRAKA TECHNOLOGIES, N.V.,<br><br>Defendants. | Case Number: 1-04-CV-1879-CC<br><br>PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO ALTER OR AMEND JUDGMENT UNDER RULE 59(e) |

The Defendants Yangtze Optical Fibre and Cable Company, Ltd. ("YOFC"), and Draka Technologies, N.V. (according to Defendants, more accurately known as Draka Fibre Technology, B.V.) ("Draka"), [1] both entities formed outside the United States, have previously moved this Court to dismiss the Complaint of the Plaintiff, Ganda, LLC ("Ganda") based upon this Court's alleged lack of personal jurisdiction and improper venue. On July 19, 2005, an order granting the Defendants' Motion was entered. Ganda hereby moves this Court to alter or amend this judgment pursuant to Fed. R. Civ. P. 59(e).

The judgment as entered is erroneous in that it ignores federal long-arm personal jurisdiction over the Defendants

---

[1] Draka as used herein will also refer to Draka's affiliated entities, predecessor Draka entities such as Plasma Optical Fibre, B.V. and successor entities such as Draka Comteq. The relationship among these entities is explained in detail in paragraph 8 of John Edward's Affidavit, attached as Exhibit A.

Case 1:04-cv-01879-CC Document 35 Filed 08/02/2005 Page 2 of 21

pursuant to Fed. R. Civ. P. 4(k)(2). The Court's judgment also overlooks factors which create "minimum contacts" jurisdiction under Georgia's Long Arm Statute, O.C.G.A. §9-10-91.

FEDERAL LONG ARM JURISDICTION UNDER THE SHERMAN AND CLAYTON ACTS

Fed. R. Civ. P. 4(k)(2) provides:

> If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.

According to the Eleventh Circuit, Rule 4(k)(2) sanctions personal jurisdiction over foreign entity defendants, such as YOFC and Draka, for claims arising under federal law when the defendant has sufficient contacts with the nation as a whole to justify the imposition personal jurisdiction, although there are not sufficient contacts to satisfy the long-arm statute of any particular state. *United States Securities and Exchange Commission v. Carrillo*, 115 F. 3d 1540, 1543-44 (11th Cir. 1997). The rule functions "as a species of federal long arm statute" by closing the loophole that previously existed when foreign defendants "lacked single state contact sufficient to bring them within the reach of a given state's long arm statute, but had enough contacts with the United

States as a whole to make personal jurisdiction over them in a United States Court constitutional." *United States v. Swiss Am. Bank, Ltd.*, 191 F. 3d 30, 40 (1st Cir. 1999); see also *Max Daetwyler Corp. v. R. Meyer*, 762 F. 2d at 290, 291 (3rd Cir. 1985). The Eleventh Circuit has also stated that when a federal statute provides for nationwide service of process, it becomes the statutory basis for personal jurisdiction. *Republic of Panama v. BCCI Holdings (Luxembourg) S.A., et al*, 119 F. 3d 935 (11th Circ. 1997). The Eleventh Circuit's analysis of the rule is in conformity with other Circuits' interpretation:

> Other circuits have uniformly held that 'when the personal jurisdiction of a federal court is invoked based upon a federal statute providing for nationwide or worldwide service, the relevant inquiry is whether the respondent has had sufficient minimum contacts with the United States.'

*Securities Exchange Comm'n vs. Carillo,* 115 F.3d at 1543.

The seminal case applying the "aggregate contacts" or "national contacts" jurisdictional theory in the antitrust area is *Moriarty & Co. and Vinyloy, Inc. v. The General Tire and Rubber Co.*, et al, 289 F. Supp. 381 (S.D. Ohio 1967). The *Moriarty* court was one of the first to articulate the rationale behind this theory:

> It is our opinion that a federal district court may acquire jurisdiction over the

> person of a defendant incorporated under the laws of a foreign country without regard to contacts of the corporation with the state where the court sits. This is especially true in a case where the cause of action rests upon a federally-created right, such as this one, and where national uniformity in enforcing that right should be the true guideline.

*Moriarty*, 289 F. Supp. At 389.

In *Republic of Panama, supra,* the Eleventh Circuit stated that where a federal statute provides the basis for jurisdiction, the due process requirements of the Fifth, rather than the Fourteenth, Amendment drive the constitutional analysis of the jurisdictional issue[2]: "a defendant's contacts with the forum state play no magical role in the Fifth Amendment analysis." *Republic of Panama*, 119 F. 3d at 946. The court went on to state:

> As a practical matter…state lines cannot provide an accurate measure of the burdens that would be imposed on a defendant by requiring him to defend an action in a particular forum. There is nothing inherently burdensome about crossing a state line. …thus, determining whether litigation imposes an undue burden on a litigant cannot be determined by evaluating only a defendant's contacts with the forum state.

---

[2] Other courts have endorsed this analysis. For example, the First Circuit has stated that when a district court's subject matter jurisdiction is founded upon a federal question, the constitutional limits of the court's personal jurisdiction are fixed, not by the Fourteenth Amendment, but by the due process clause of the Fifth Amendment. *United Electric, Radio & Machine Workers v. 163 Pleasant St. Corp.*, 960 F. 2d 1080, 1085 (1st Cir. 1992). Federalism concerns which hover over the jurisdictional equation in a diversity case are absent in a federal question case so that a federal court's power to assert personal jurisdiction is geographically expanded. *Id.* In such circumstances, the constitution requires only that the defendant have the requisite "minimum contacts" with the United States, rather than with the particular forum state. *Id.*

Case 1:04-cv-01879-CC Document 35 Filed 08/02/2005 Page 5 of 21

Id.

In the present case, Ganda's Complaint states a claim against for violations of federal antitrust statutes, the Sherman and Clayton Acts, 15 U.S.C. §1, et seq., see *Complaint, Fifth Cause of Action*. These claims arise from the well-documented plans of the Defendants to push Ganda aside so that the defendants could carve up the North American market for fiber and fix prices in that market. These plans were initiated at least as far back as January 22, 1999, when Draka wrote to YOFC demanding that YOFC assist Draka in "killing all commercial activities from Ganda towards our USA market." *Complaint at ¶54* and *Exhibit B to Complaint*. Draka's letter complained that Ganda was competing against Draka "with better prices."

As for the long-arm requirement that the federal statute at issue provide for nationwide service of process, Section 12 of the Clayton Act (15 U.S.C. §22) does so:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

The courts have uniformly held that the foregoing provision permits nationwide and worldwide service of process. *Go-Video, Inc. v. Akai Electric Company, Ltd., et al*, 885 F. 2d 1406, 1414-16 (9th Cir. 1989).

Accordingly, in the instant case, the relevant inquiry in determining whether this court may assert personal jurisdiction over the Defendants is not whether Defendants have sufficient minimum contacts with the state of Georgia, but whether they have sufficient contacts with the United States as a whole.

NATIONAL CONTACTS ON THE PART OF YOFC

According to the Affidavit of Ganda's owner, John Edward, attached as Exhibit A, YOFC, based upon work done by Ganda, signed contracts for the sale of in excess of $70 million dollars worth of optic fiber in Georgia, Virginia, South Carolina, North Carolina, Kentucky and Connecticut from 1998 through 2003. These contracts were signed by YOFC with at least three different clients, Lucent, BICC and OCC. All of Ganda's breach of contract commission claims and antitrust claims in this litigation arise directly out of these contracts. Affidavit of Edward at ¶2.

YOFC undertook substantial marketing operations in the United States through Ganda. Affidavit of Edward at ¶3. YOFC

Case 1:04-cv-01879-CC Document 35 Filed 08/02/2005 Page 7 of 21

also undertook marketing operations through its own personnel in the United States, in cooperation with or support for Ganda, sending its employees to the United States to visit with clients, make sales pitches, negotiate/execute contracts and attend industry conferences either alongside Ganda representatives or, at times, alone. Affidavit of Edward at ¶3. YOFC regularly sent its own employees to the trade show known as the Optical Fiber Conference, including the OFC held in Baltimore, Maryland in 2000; Anaheim, California (2001 and 2002); Atlanta, Georgia (2003) and Los Angeles, California (2004). At the 2003 and 2004 conferences YOFC jointly sponsored a sales booth with Draka. YOFC also sent its employees to the International Wire and Cable Society ("IWCS") trade show in Atlantic City, New Jersey, in November 2000, and to the subsequent IWCS trade shows in Orlando, Florida (2001 and 2002) and Philadelphia, Pennsylvania (2003). Affidavit of Edward at ¶3.

YOFC had American bank accounts, as shown by its January 26, 2001 contract with Lucent Technologies, Inc., ("Lucent/YOFC contract"), attached as Exhibit B (see page seven of Lucent/YOFC contract wherein YOFC required that payments be made to its account at Bankers Trust Company in New York). In the Lucent/YOFC contract YOFC also agreed to submit to jurisdiction in any court wherein an action might be

commenced by Lucent in connection with the agreement, and to the application of the laws of the State of New Jersey to govern that agreement. Lucent/YOFC Contract, page 3, "Choice of Law."

YOFC therefore had substantial contacts with the United States as whole, justifying the assertion of personal jurisdiction over YOFC under the above-referenced federal long-arm statutes.

NATIONAL CONTACTS ON THE PART OF DRAKA

Like YOFC, Draka sold substantial quantities of fiber to customers in various American states, including Georgia, South Carolina, North Carolina, Massachusetts and Virginia. Edward Affid. at ¶5. As has been previously noted, in 1998/99, before Ganda secured this business for YOFC, Draka was an established fiber supplier to the Lucent facility in Norcross, Georgia. Ganda's success in securing Lucent's business for YOFC, (Lucent subsequently generated orders worth over $70 million for YOFC), was in fact part of the provocation for Draka's writing the "kill Ganda" correspondence of January 22, 1999.

Draka currently owns fiber optical cable manufacturing facilities in the United States, has sent its employees to meet with U.S. fiber clients and negotiate/execute contracts in the United States (said contracts to be performed in the

Case 1:04-cv-01879-CC Document 35 Filed 08/02/2005 Page 9 of 21

US), and has sent its employees on marketing trips to trade shows here. Edward Affid. at ¶¶3, 6 and 8. Draka in fact sent representatives to the same IWCS and OFC trade shows mentioned above with regard to YOFC, jointly sponsored sales booths with YOFC at these conferences, and sent representatives to the Kessler Marketing Institute fiber conference held each fall in Newport, Rhode Island in order to learn about the US market in order to be able to sell their products to American customers . Edward Affid. at ¶3. YOFC and Draka's joint sponsorship of sales booths at these trade shows gave them the opportunity to exchange information on the market and customer activities, meet customers together and to confirm sales quantities and prices to certain customers.

Draka's American customers, in the 1998-2003 timeframe, included: Lucent Technologies, Inc.'s facility in Norcross, Georgia; OCC in Roanoke, Virginia and Chromatic Technologies in Massachusetts, along with certain others in the Carolinas.

In October of 1998 a senior manager from Draka's predecessor, Plasma Optical Fibre, B.V. ("POF"), visited John Edward in his hometown of Wilmington, North Carolina. His stated purpose was to offer to purchase Edward's interest in Ganda. He indicated at the time that POF wanted to control YOFC's sales into the North American market and that this was his motive for buying out Ganda. Edward Affid. at ¶7 and

Case 1:04-cv-01879-CC Document 35 Filed 08/02/2005 Page 10 of 21

Exhibit A-2 (letters from Draka manager offering to purchase Ganda).

As a result of Edward's refusal of this buyout offer, in 1999 Draka's predecessor POF contracted with a trucking company to warehouse their fiber in the United States for quick delivery to American customers. This operation was known as the Yellow Trucking Company and based in New Jersey. Draka began this operation to enhance its ability to compete with Ganda's US-based delivery capability. Edward Affid. at ¶6.

<u>MINIMUM CONTACTS WITH GEORGIA</u>

For the reasons set forth above, Ganda submits that the relevant focus in the jurisdictional inquiry should not be on the Defendants' contacts with the State of Georgia but on their contacts with the United States as a whole. Should the court nevertheless focus on minimum contacts with Georgia and particularly on the Lucent/YOFC contract of January, 2001, Ganda wishes to clarify certain facts concerning that contract. In particular, certain facts concerning the timing and place of execution of this contract were, at the conclusion of oral argument on Defendants' Motion to Dismiss, left unclear.

John Edward and his Ganda colleague, Syed Mustafa, met in Atlanta on January 21, 2001, with YOFC's sales manager, Yan Chang Kun. The purpose of their meeting was to prepare for and

facilitate final negotiations with representatives of Lucent concerning Lucent's purchase of 62.5 micron multimode optical fiber during the period January 1, 2001 through December 31, 2003. Edward Aff. at ¶9. After several days of negotiations, the Lucent/YOFC contract was executed on behalf of Lucent *in Norcross* on January 26, 2001, by Scott T. Searles, Director. Edward Aff. at ¶10; Exhibit B (Lucent/YOFC contract) and Exhibit A-2 (Letter from Searles thanking Yan Chang Kun for his "leadership" during these negotiations). Searles forwarded the contract to YOFC in China, see forwarding letter Ex. A-2, and it was executed by YOFC's general manager, Xu Xizhou, a week later on February 3, 2001, <u>with no material changes</u>. Edward Aff. at ¶11. This contract was to be performed entirely in Norcross, Georgia.

Approximately 60,000 kilometers of fiber was shipped from YOFC to Lucent in Norcross under this contract. Under the terms of the Agreement signed in April, 2001 between YOFC and Ganda, Ganda was due a commission of $5 per kilometer of fiber. YOFC failed to advise Ganda of these shipments and the commissions due within the terms of the YOFC/Ganda agreement, which commission amounted to $300,000. The past due commission is a part of Ganda's claims in the current lawsuit. Edward Aff. at ¶12.

The total amount of fiber which was to have been shipped under the Lucent/YOFC contract was 300,000 kilometers with a value of $32,000,000. Ganda was to have earned a contractually stipulated commission of $5.00 per kilometer for these sales, a total commission of $1.5 million dollars. Edward Aff. at ¶13. This commission is part of the damages claimed in this litigation.

On page 11 of the Lucent/YOFC contract, Mr. Syed Mustafa was identified as the "day-to-day" American-based contact for YOFC and his telephone number, a New York State extension, was provided. *Exhibit B.*

In 2003, YOFC filed suit against Lucent in the United States District Court for the District of Massachusetts, (*Yangtze Optical Fibre and Cable Company Ltd. v. Lucent Technologies, Inc.*), to enforce its rights under the Lucent/YOFC contract. *See Massachusetts Complaint, attached as Exhibit C.* YOFC is claiming damages of between fifteen and twenty million dollars in the Massachusetts lawsuit based upon Lucent's failure to take delivery of all of the fiber agreed upon in the above-referenced Lucent/YOFC contract.

In 1998/99 Draka's predecessor POF was an established supplier of fiber to the Lucent facility in Norcross, Georgia. As already noted, the "kill Ganda" letter generated by Draka in January, 1999 was a result of sales which Draka believed it

Case 1:04-cv-01879-CC Document 35 Filed 08/02/2005 Page 13 of 21

was losing to Ganda at the Lucent facility in Norcross. Edward Aff. at ¶14.

The above facts make clear that, even if this Court focuses only on the Defendants' "minimum contacts" with the state of Georgia, rather than the United States as a whole, there is a sufficient basis to assert personal jurisdiction over the Defendants in this forum.

RELATIONSHIP BETWEEN CONTACTS WITH A FORUM AND GANDA'S CLAIMS

Ganda's claims against the Defendants arise directly from the Defendants' contacts with Georgia and the United States. The largest single portion of Ganda's commission claim against YOFC, for $1.5 million dollars, is based directly upon the Lucent/YOFC contract originated in Norcross, Georgia. Draka's attempts to squeeze Ganda out of the North American market and tortiously interfere with the Ganda/YOFC contract directly impacted Georgia since Georgia was a major part of that North American market. Georgia was home to Lucent, YOFC's largest customer, and one of Draka's largest potential customers until Draka lost the business in 1999.

Ganda's antitrust claims are also related to the Defendants' contacts with the United States as a whole. All of

Case 1:04-cv-01879-CC Document 35 Filed 08/02/2005 Page 14 of 21

the above-referenced contacts by the Defendants with the United States were designed to increase the Defendants' share of the U.S. fiber market and to fix prices and profits in that market by squeezing Ganda out of it. The Defendants' successful efforts in this regard resulted in higher prices paid by U.S. buyers of fiber in Georgia, Virginia, Kentucky, Massachusetts, Connecticut, South Carolina and North Carolina, among other areas.

PENDENT JURISDICTION

The ground-breaking *Moriarty* decision, cited above, was one of the first to develop an "aggregate contacts" theory in the antitrust area. It also addressed pendent jurisdiction in the antitrust context. The *Moriarty* court noted that the first requirement for pendent jurisdiction is that there be a "substantial" federal claim. The court interpreted the term "substantial" to refer to a cause of action which would withstand a motion to dismiss for failure to state a claim. *Moriarty*, 289 F. Supp. At 385. The appended claims must then be related to the federal claim in sufficient degree to confer pendent jurisdiction over them. Id. With respect to the "relatedness" requirement, the court stated:

> Under the federal rules of civil procedure, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties [citation omitted]. Joinder of

> claims, parties and remedies is strongly encouraged; yet the federal court is limited to the extent that jurisdictional requirements must be met. However, it has always been the essential rule that once jurisdiction is laid in the federal court, that court must have the power to hear and dispose of the entire case.

289 F. Supp. at 385.

The *Moriarty* court went on to state:

> Were a federal court resigned to hearing only questions which satisfy the jurisdictional requirements, it would be possible, and more likely probable, that the federal courts would be relegated to an advisory position in respect to state courts. In more cases than not, the federal courts would be unable to render a decision, because the full case would not be presented.

Id.

Finally, the *Moriarty* court noted that in order for the claims to be sufficiently related for pendent jurisdiction to lie, they must arise from a common "nucleus of operative fact." This was construed to mean that if the plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then there is power in the federal court to hear the entire matter. 289 F. Supp. At 386.

All of Ganda's claims against YOFC and Draka arise from the business relationship which it had with YOFC and, through YOFC, with Draka, a 37.5 percent YOFC shareholder. Ganda's

breach of contract claims against YOFC are inextricably intertwined with Ganda's tort and antitrust claims against both YOFC and Draka. Draka conspired with YOFC to breach YOFC's contract with Ganda in order to further their price-fixing conspiracy. Accordingly, this federal court has pendent subject matter jurisdiction over the state law claims contained in Ganda's Complaint.

VENUE

The Alien Venue Statute provides for venue in antitrust actions against foreign corporations in any district in the United States. 28 U.S.C. §1391(d). Section 1391(d) derives from a tradition "going back to the beginning of the republic, under which suits against aliens were left unrestricted, and could be tried in any district, subject only to the requirement of service of process." *In re: Automotive Refinishing Paint Antitrust Litigation, BASF AG and BASF Coatings AG,* 358 F. 3d 288 (3d Cir. 2004). The venue provisions of Section 1391(d) have been held to be unrestricted by any later enactments in the Clayton Act. *In re: Automotive Refinishing,* 358 F. 3d at 296-97 (discussing §12 of the Clayton Act and rejecting a foreign corporation's claim that the Clayton Act's requirement that it be sued only where it "is found" or "transacts business" restricts

Case 1:04-cv-01879-CC Document 35 Filed 08/02/2005 Page 17 of 21

§1391(d)). Accordingly, venue for this case is proper in the Northern District of Georgia.

JURISDICTIONAL DISCOVERY

The Eleventh Circuit has stated that a plaintiff must only establish a "prima facie" case of personal jurisdiction over a non-resident defendant in order to prevail on a Rule 12 Motion to Dismiss. *Republic of Panama v. BCCI Holdings, supra,* 1119 F. 3d at 1542.

> The district court must accept the facts alleged in the Complaint as true, to the extent they are uncontroverted by the defendants' affidavits. Finally, where the plaintiffs' complaint and the defendants' affidavits [or depositions] conflict, the district court must construe all reasonable inferences in favor of the plaintiff.

Id.

In terms of showing that YOFC and Draka have minimum contacts with the United States, Ganda submits that it has met the foregoing factual standard. Nonetheless, if the court disagrees, Ganda submits that it is entitled to conduct jurisdictional discovery to establish the requisite minimum contacts. Other courts have recognized that, where plaintiffs have made a threshold showing of personal jurisdiction, jurisdictional discovery is warranted. *In re: Automotive Refinishing*, 358 F. 3d at 292. Because of Plaintiff's limited knowledge of the inner workings of Draka's business, Plaintiff has been particularly handicapped in being able to establish

details concerning Draka's contacts with the United States. Ganda is entitled to discovery to establish what those details may be prior to this court's depriving Ganda of what may be its only American forum for adjudicating its price-fixing claim against Draka.

CONCLUSION

The antitrust statutes of the United States provide for worldwide service of process on antitrust defendants. The federal courts which have considered the issue have therefore held that these statutes permit the assertion of personal jurisdiction over foreign defendants based upon their contacts with the United States as a whole, rather than a particular state. The contacts of YOFC and Draka with the United States are undoubtedly sufficient to satisfy this "national contacts" jurisdictional test.

Accordingly, Draka and YOFC are subject to the personal jurisdiction of this Court under the long-arm provisions of the antitrust laws. In the alternative, they are subject to the court's jurisdiction under a traditional "minimum contacts" test focusing only on Georgia. Ganda therefore respectfully requests that this Court alter or amend its judgment entered July 19, 2005, entering a judgment asserting jurisdiction over these Defendants and finding that venue is proper in this forum.

Respectfully submitted,

*/s/ James L. Rogers, Jr.*

Robert S. Huestis
(Georgia State Bar #374740)

SWIFT, CURRIE, MCGHEE & HIERS, LLP
1355 Peachtree Street, NE
The Peachtree, Suite 300
Atlanta, GA 30309
(404) 888-6147
and
James L. Rogers, Jr.
(S.C. Bar #9914)
LEATHERWOOD WALKER TODD & MANN, P.C.
300 E. McBee Avenue, Suite 500
P. O. Box 87
Greenville, SC 29602
(864) 2420-6440

**CERTIFICATE OF SERVICE**

I, James L. Rogers, do hereby certified that on this 2nd day of August 2005, I caused a true and correct copy of the foregoing document to be filed with the Clerk of Court via the ECF filing procedure and forwarded via United States Mail and/for electronic transmission to the following:

Thomas M. Byrne
Suzanne M. Alford
SUTHERLAND ASBILL & BRENNAN, LLP
999 Peachtree Street, NE
Atlanta, Georgia 30309-3996

Ira K. Gross
Samual Bosarge Dutton
SULLIVAN & WORCESTER, LLP
One Post Office Square
Boston, MA 02109

I hereby certify this document was prepared in accordance with Court Rule LR 5.1B, ND Ga., in the Courier New (12 point) font.

This 2nd day of August 2005.

[Signature on next page.]

Case 1:04-cv-01879-GC Document 35 Filed 08/02/2005 Page 21 of 21

Respectfully submitted,

*/s/ James L. Rogers Jr.*

Robert S. Huestis
(Georgia State Bar #374740)

SWIFT, CURRIE, MCGHEE & HIERS, LLP
1355 Peachtree Street, NE
The Peachtree, Suite 300
Atlanta, GA 30309
(404) 888-6147
and
James L. Rogers, Jr.
(S.C. Bar # 9914)
LEATHERWOOD WALKER TODD & MANN, P.C.
300 E. McBee Avenue, Suite 500
P. O. Box 87
Greenville, SC 29602
(864) 2420-6440

Attorneys for Plaintiff

1495046v.1