UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| Yangtze Optical Fibre and Cable Company Ltd., Plaintiff, vs. Ganda, LLC, a/k/a Ganda Communications and John Edward, Defendants/Third Party Plaintiffs, vs. Draka Comteq, B.V., Draka Comteq Fibre, B.V. f/k/a Plasma Optical Fibre, B.V., Plasma Optical Fibre, B.V., Draka Comteq Americas, Inc. and Draka Holding, N.V., Third Party Defendants. | ) | Civil Action No. 04-474ML |

**AMENDED ANSWER, COUNTERCLAIM AND COMPLAINT AGAINST DRAKA COMTEQ, B.V., DRAKA COMTEQ FIBRE, B.V. f/k/a PLASMA OPTICAL FIBRE, B.V., PLASMA OPTICAL FIBRE, B.V., DRAKA COMTEQ AMERICAS, INC. AND DRAKA HOLDING, N.V. AND DEMAND FOR JURY TRIAL**

Defendants/Third Party Plaintiffs Ganda, LLC, doing business as Ganda Communications ("Ganda") and John Edward ("Edward") (collectively referred to as the "Defendants"), respond to the Complaint of the Plaintiff, Yangtze Optical Fibre and Cable Company Ltd. ("YOFC"), and set forth claims against the Third Party Defendants Draka Comteq, B.V., Draka Comteq Fibre, B.V. f/k/a Plasma Optical Fiber, B.V., Plasma Optical Fibre, B.V., Draka Comteq Americas, Inc. and Draka Holding, N.V. ("the Draka Defendants"), as follows:

## RESPONSE TO THE ALLEGATIONS OF YOFC

1. Each and every allegation contained in the Complaint which is not hereinafter expressly admitted is deemed denied.

2. Paragraph 1 of the Complaint is descriptive only and requires no response from the Defendants. To the extent that any response is deemed necessary, the allegations in Paragraph 1 are denied.

3. The allegations of Paragraph 2 of the Complaint are, upon information and belief, admitted.

4. Defendants admit so much of Paragraph 3 as alleges that Ganda is a limited liability company organized and existing under the laws of the State of Delaware. Defendants deny the remainder of Paragraph 3.

5. Defendants admit the allegations in Paragraph 4 of the Complaint.

6. Defendants admit the allegations of Paragraph 5.

7. Defendants deny the allegations in Paragraph 6.

8. In response to the allegations contained in Paragraph 7, Defendants admit that YOFC and Ganda began doing business together on or about April 1998 and that Ganda obtained use of a Rhode Island warehouse in which to store fiber manufactured by YOFC until such time as the fiber was to be shipped to North American customers. The remaining allegations of Paragraph 7 are denied.

9. In response to the allegations contained in Paragraph 8, Defendants admit that on or about June 28, 1998 YOFC and Ganda entered into a written agreement to which was later added an addendum entitled "Clarification and Additions to Agreement" extending the term of

the agreement to April 30, 2001. The terms of that agreement speak for themselves. The remaining allegations of Paragraph 8 are denied.

10. In response to the allegations contained in Paragraphs 9 and 10, Defendants refer to the 1998 Agreement, the terms of which speak for themselves, and Defendants deny any allegations inconsistent with it.

11. Defendants admit the allegations contained in Paragraph 11.

12. In response to the allegations contained in Paragraph 12, Defendants admit that YOFC and Ganda executed a new agreement on or about April 6, 2001. With respect to the remaining allegations of Paragraph 12, Defendants refer to the 2001 Agreement.

13. In response to the allegations contained in Paragraph 13, Defendants refer to the 2001 Agreement.

14. In response to the allegations contained in Paragraphs 14 through 17, Defendants refer to the 2001 Agreement and any attachments thereto.

15. In response to the allegations contained in Paragraph 18, Defendants admit that YOFC and Ganda executed a Memorandum of Understanding contemporaneously with the execution of the 2001 Agreement. With respect to the remaining allegations of Paragraph 18, Defendants refer to the Memorandum of Understanding.

16. In response to the allegations of Paragraph 19, Defendants admit sending YOFC a letter dated July 18, 2002. With respect to the remaining allegations of Paragraph 19, Defendants refer to the letter.

17. In response to the allegations contained in Paragraph 20, Defendants admit that Ganda received YOFC's facsimile dated August 5, 2002 which acknowledged receipt of Ganda's letter and YOFC's intention and desire to terminate the relationship between YOFC and Ganda.

18. The allegations of Paragraph 21 are denied.

19. In response to the allegations of Paragraph 22, Defendants admit that during the course of YOFC's and Ganda's contractual relationship, certain North American end-users of YOFC-manufactured fiber remitted payments to Ganda in Rhode Island. The remaining allegations of Paragraph 22 are denied.

20. The allegations of Paragraphs 23 through 30 are denied.

21. With respect to Paragraph 31, Defendants restate and incorporate herein their answers to Paragraphs 1 through 30 of the Complaint.

22. In response to the allegations of Paragraph 32, Defendants admit that YOFC and Ganda entered into an agreement, the terms of which speak for themselves. The remaining allegations of Paragraph 32 are denied.

23. The allegations of Paragraphs 33 through 35 are denied.

24. With respect to Paragraph 36, Defendants restate and incorporate herein their answers to Paragraphs 1 through 35 of the Complaint.

25. The allegations of Paragraphs 37 through 40 are denied.

26. With respect to Paragraph 41, Defendants restate and incorporate herein their answers to Paragraphs 1 through 40 of the Complaint.

27. The allegations of Paragraphs 42 through 44 are denied.

28. With respect to Paragraph 45, Defendants restate and incorporate herein their answers to Paragraphs 1 through 44 of the Complaint.

29. In response to Paragraph 46, Defendants admit that Edward directly or indirectly owns, controls or holds the power to vote twenty percent (20%) or more of the equity interests of Ganda. The remaining allegations of Paragraph 46 are denied.

30. The allegations of Paragraphs 47 through 51 are denied.

31. With respect to Paragraph 52, Defendants restate and incorporate herein their answers to Paragraphs 1 through 51 of the Complaint.

32. The allegations of Paragraphs 53 through 56 are denied.

**FOR A FIRST AFFIRMATIVE DEFENSE**
**(Failure to State a Claim)**

33. Defendants restate and incorporate each and every defense and allegation set forth above.

34. Plaintiff's Complaint should be dismissed for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

**FOR A SECOND AFFIRMATIVE DEFENSE**
**(Statute of Limitations)**

35. Defendants restate and incorporate each and every defense and allegation set forth above.

36. Plaintiff's claims are barred, in whole or in part, by the applicable statute of limitations.

**FOR A THIRD AFFIRMATIVE DEFENSE**
**(Unclean Hands)**

37. Defendants restate and incorporate each and every defense and allegation set forth above.

38. Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

**FOR A FOURTH DEFENSE**
**(Waiver and Estoppel)**

39. Defendants restate and incorporate each and every defense and allegation set forth above.

40. Plaintiff's claims are barred, in whole or part, by waiver and estoppel.

**FOR A FIFTH DEFENSE AND BY WAY OF FIRST COUNTERCLAIM AS TO YOFC ONLY**
**(Breach of Contract)**

41. Defendants restate and incorporate each and every defense and allegation set forth above.

42. This Court has subject matter jurisdiction over Defendants' claims pursuant to 28 U.S.C. §§ 1331, 1332 and 15 U.S.C. §§ 15 and 22.

43. The 1998 Agreement attached as **Exhibit A** to YOFC's Complaint designated Ganda to be an exclusive sales agent for YOFC products in North America, Japan and certain other global markets. Pursuant to the 1998 Agreement, as amended on February 1, 2000, Ganda established and serviced markets for YOFC's fiber optic products in North America and elsewhere. Prior to Ganda's involvement, YOFC did not have a permanent established market position in North America. Ganda was to be compensated under the 1998 Agreement by payment of a commission for orders received from customers for YOFC's optical products in North America and other designated markets. Beginning in 1999, however, Ganda also began taking title to shipments of optical products from YOFC and reselling those products with a "mark up." The purpose of this modification to the 1998 Agreement was to allow Ganda to accumulate cash on behalf of YOFC in addition to its sales commission. This was done at the explicit request and direction of the highest levels of YOFC's management.

44. As a result of Ganda's efforts, YOFC became established in the North American market with a permanent presence.

45. At all times relevant to the respective agreements between the parties, Ganda worked diligently to sell YOFC's fiber optic products in accordance with the terms of said agreements.

46. Despite Ganda's efforts to perform fully in accordance with the terms of the agreements, YOFC made no appreciable effort to support Ganda in the North American market. Specifically, YOFC circumvented Ganda's involvement and initiated and/or pursued direct negotiations with several of Ganda's customers with the intention to avoid paying sales commissions due Ganda under the terms of the agreements between the parties.

47. By letter dated July 18, 2002, Ganda advised YOFC that it considered YOFC's conduct to constitute constructive termination of the April 6, 2001 Agreement between the parties.

48. By facsimile dated August 5, 2002, YOFC, by and through its corporate representative, acknowledged receipt of Ganda's July 18, 2002 letter and acknowledged its desire to terminate the relationship between YOFC and Ganda.

49. In both the 1998 Agreement and the April 6, 2001 Agreement, YOFC agreed to coordinate with Ganda to develop the worldwide market for YOFC's fiber optic products.

50. YOFC repeatedly failed to perform as required under the terms of the subject agreements. For example, YOFC deliberately disregarded its agreement with Ganda by shipping at least 60,000 kilometers of fiber directly to a Ganda North America client, the Optical Cable Corporation ("OCC"), in 2001 and 2002. YOFC failed to pay Ganda the commissions due on these shipments and others.

51. In both the 1998 Agreement and the April 6, 2001 Agreement, and in various documents executed by YOFC, YOFC committed to "ship optical fiber products in keeping with

customer orders and ship schedules to meet customer commitments and expectations." Parag. 3.1(b). YOFC breached this commitment by repeatedly short-shipping Ganda's clients, causing Ganda to lose orders and customers.

52. YOFC also breached Article 3 of the April 6, 2001 Agreement by failing to communicate with Ganda about its sales targets and strategies; to ship optical fiber products in keeping with customer orders; to provide timely updates on shipments; to provide information regarding the availability of fiber optic products to Ganda; and to timely respond to sales opportunities offered by Ganda.

53. YOFC failed to negotiate in good faith to extend the April 6, 2001 Agreement beyond April, 2003, in violation of Article 9.3 and despite making repeated verbal and written assurances that it would so negotiate.

54. Article 11 of the April 6, 2001 Agreement provided that in the event that the relationship between Ganda and YOFC was terminated "for any reason, commissions will be payable to the date of termination and pro rated forward for 6 months beyond the date of any existing agreements."

55. Under Article 11 of the April 6, 2001 Agreement Ganda is entitled to commissions generated on any contract or commitment signed by YOFC with a Ganda client prior to the date of termination of that Agreement, July 31, 2002 (hereafter "Existing Contracts"). Accordingly, the amounts due Ganda from YOFC include not only commissions on orders actually shipped prior to July 31, 2002, but commissions generated at any time during the lifetime of any Existing Contracts. In addition, under Article 11 Ganda is entitled to commissions for six months beyond the date of the expiration of any Existing Contracts based upon the volume of sales generated by the Existing Contracts during their period of validity.

56. YOFC has failed to comply with its obligation as set forth in the April 6, 2001 Agreement.

57. YOFC's numerous breaches and failures to comply with the terms of the Original Agreement and the April 6, 2001 Agreement resulted in damage to Ganda, including, but not limited to, lost commissions.

58. Ganda is entitled to recover all of its actual and consequential damages from YOFC.

**FOR A SIXTH DEFENSE AND BY WAY OF**
**SECOND COUNTERCLAIM AS TO YOFC ONLY**
**(Breach of Contract Accompanied by a Fraudulent Act)**

59. Defendants restate and incorporate each and every defense and allegation set forth above.

60. At the time the parties entered into the April 6, 2001 Agreement YOFC represented to Ganda that it would perform in accordance with the terms of said agreement by providing fiber optical products to Ganda for sale and distribution to customers located in the United States. In addition, in this Agreement YOFC explicitly recognized that the Optical Cable Corporation ("OCC") was a Ganda customer.

61. At the time Ganda and YOFC executed the April 6, 2001 Agreement, however, YOFC had no intention of honoring this Agreement. In fact, YOFC had already engaged in successful negotiations with at least one of Ganda's clients, OCC, to provide fiber optical products directly to them without the knowledge of Ganda. YOFC failed to disclose its solicitation of such clients in order to induce Ganda to execute the April 6, 2001 Agreement.

62. YOFC shipped products to OCC without disclosing such shipments to Ganda or paying commissions to Ganda.

63. YOFC's conduct violated Section 8.3 of the Agreement since it failed to forward certain required documents to Ganda regarding the sale of products to OCC.

64. Ganda executed the April 6 Agreement based on YOFC's representations and assurances that it would perform in accordance with the terms of said agreement by providing fiber optic cables and products to Ganda for sale to customers located in the United States.

65. YOFC's representations were false, as evidenced by its conduct in communicating and negotiating directly with customers located in the United States. In addition, YOFC's board had already decided, as a matter of corporate policy, to eliminate Ganda as its agent a year prior to execution of the April 6, 2001 Agreement, as shown by the attached minutes of YOFC's board meeting dated April 19 to 20, 2000, **Exhibit C**. Thus, at the time YOFC executed the April 6, 2001 Agreement it had no intention to honor the Agreement.

66. Ganda justifiably relied on YOFC's representations to its detriment. As a result of YOFC's representations, Ganda is entitled to recover all commissions due pursuant to the agreements, all profits generated thereby, as well as such other actual and punitive damages that may be determined by the trier of fact.

**FOR A SEVENTH DEFENSE, THIRD COUNTERCLAIM AS TO YOFC AND BY WAY OF FIRST CAUSE OF ACTION AS TO THE DRAKA DEFENDANTS**
**(Violations of the Sherman and Clayton Act)**

67. Defendants restate and incorporate each and every defense and allegation set forth above.

68. Ganda brings these claims against YOFC and Draka Comteq, B.V., Draka Comteq Fibre, B.V. f/k/a Plasma Optical Fiber, B.V., Plasma Optical Fibre, B.V., Draka Comteq Americas, Inc. and Draka Holding, N.V. ("the Draka Defendants").

69. This Court has subject matter jurisdiction over these claims under 28 U.S.C. § 1331, 1332 and 1367.

70. This Court has personal jurisdiction over the Draka Defendants based upon their contacts with the United States. Specifically, the Draka Defendants have sold millions of dollars worth of fiber in the United States to various customers, have a production facility in Claremont, North Carolina, and have sales representatives and offices in various US cities. Ganda is only required to show minimum contacts with the United States as a whole under the "aggregate contacts" theory of jurisdiction endorsed by the First Circuit in *United States v. Swiss Am. Bank, Ltd.*, 191 F. 3d 30, 40 (1st Cir. 1999).

71. Ganda and the Draka Defendants were competitors for the sale of fiber optical products in the United States market during the time relevant to this action. The Draka Defendants and YOFC likewise competed with each other for the sale of fiber optical products in North America, including the United States, during the time relevant to this action.

72. The sale of fiber optical products in the United States constitutes a relevant market for purposes of this cause of action.

73. On January 22, 1999, the Draka Defendants issued a demand in writing, by faxed letter, that YOFC assist it in "kill[ing] all commercial activities from Ganda towards our USA market." A copy of this letter is attached as **Exhibit B**. In that communication, the Draka Defendants complain that Ganda is competing against the Draka Defendants "with better prices."

74. YOFC acquiesced to the Draka Defendants' demand, as shown by the April 19 to 20, 2000 minutes of the meeting of YOFC's board, attached as **Exhibit C**. This conspiracy between YOFC and the Draka Defendants resulted in eliminating Ganda from the North American market for fiber optical products.

75. By eliminating Ganda from the market, the Draka Defendants and YOFC conspired to curb downward price pressure on fiber optic sales in the United States market.

76. The conspiracy between YOFC and the Draka Defendants to eliminate price competition from Ganda is per se illegal under § 1 of the Sherman Act, 15 U.S.C. § 1, and the Clayton Act.

77. Alternatively, the conspiracy between YOFC and the Draka Defendants is an unreasonable restraint on competition within the relevant market described above, in violation of § 1 of the Sherman Act, 15 U.S.C. § 1, and the Clayton Act.

78. The actions of YOFC and the Draka Defendants have damaged Ganda as described above. Ganda is entitled to recover all of its actual damages from the co-conspiratorial defendants, said damages to be trebled pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, together with attorneys' fees.

**FOR AN EIGHTH DEFENSE, FOURTH COUNTERCLAIM AS TO YOFC AND BY WAY OF SECOND CAUSE OF ACTION AS TO THE DRAKA DEFENDANTS**
**(Tortious Interference with Contractual Relations)**

79. Defendants restate and incorporate each and every defense and allegation set forth above.

80. During the course of the business relationship between Ganda and YOFC, Ganda promoted YOFC's fiber optical products to Lucent Technologies, OCC, BICC/General and others. Ganda secured contracts with these customers for the sale of fiber optical products manufactured by YOFC.

81. YOFC was aware at all times of the existence of Ganda's relationships with Lucent Technologies, OCC, and BICC/General.

82. YOFC nevertheless directly solicited Ganda's clients to provide fiber optical products despite the fact that it had previously agreed that Ganda was responsible for negotiating with such clients. Upon information and belief, YOFC did so in part at the request or demand of the Draka Defendants. The Draka Defendants knew of YOFC's agreement with Ganda.

83. Ganda's contractual relations with its clients were severed as a direct result of YOFC's conduct in directly negotiating with such clients at the Draka Defendants' insistence.

84. As a result of YOFC's and the Draka Defendants' intentional interference with Ganda's contractual relations with the above-named customers, Ganda has suffered damages in the form of lost sales and commissions, including future sales and commissions based on YOFC's failure to extend the contract. Ganda is entitled to recover all of its damages as well as punitive damages.

WHEREFORE, Defendants/Third Party Plaintiffs pray for the following relief:

1. Dismissal of all Plaintiff's claims and for the costs and expenses associated with therein;

2. An award of actual, punitive and treble damages against the YOFC and the Draka Defendants in accordance with its claim as set forth above;

3. Attorneys' fees and costs pursuant to Ganda's Sherman and Clayton Act claims; and

4. For such other and further relief as the Court deems just and proper.

GANDA, LLC, a/k/a
GANDA COMMUNICATIONS and
JOHN EDWARD

By Their Attorneys,

Justin T. Shay (#2781)
CAMERON & MITTLEMAN LLP
56 Exchange Terrace
Providence, Rhode Island 02903
(401) 331-5700
FAX (401) 331-5787

Date: January 31, 2006

Of Counsel:

James L. Rogers, Jr., Esq.
Rebecca H. Zabel, Esq.
LEATHERWOOD WALKER TODD & MANN, P.C.
300 East McBee Avenue, Suite 500
P.O. Box 87
Greenville, SC 29602-0087
(864) 242-6440
FAX (864) 240-2477

**DEMAND FOR JURY TRIAL**

Defendants, Ganda, LLC, a/k/a Ganda Communications and John Edward, hereby demand trial by jury on all claims and counts filed in this action so triable.

GANDA, LLC, a/k/a
GANDA COMMUNICATIONS and
JOHN EDWARD

By Their Attorneys,

Justin T. Shay (#2781)
CAMERON & MITTLEMAN LLP
56 Exchange Terrace
Providence, Rhode Island 02903
(401) 331-5700
FAX (401) 331-5787

Date: January 31, 2006

Of Counsel:

James L. Rogers, Jr., Esq.
Rebecca H. Zabel, Esq.
LEATHERWOOD WALKER TODD & MANN, P.C.
300 East McBee Avenue, Suite 500
P.O. Box 87
Greenville, SC 29602-0087
(864) 242-6440
FAX (864) 240-2477

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of February, 2006, a true copy of the within was sent, via first-class mail, postage prepaid, to the following:

Benjamin V. White, Esq.
Gordon P. Cleary, Esq.
Vetter & White, Inc.
20 Washington Place
Providence, RI 02903

Ira K. Gross, Esq.
Samual A. Miller, Esq.
Cherie Bosarge Dutton, Esq.
Sullivan & Worcester LLP
One Post Office Square
Boston, MA 02109

G:\cmc\Edward, J\pldgs\amendedanswer.doc