UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| Yangtze Optical Fibre and Cable Company Ltd., Plaintiff, | |
| v. | Civil Action No. 04-474ML |
| Ganda, LLC a/k/a Ganda Communications and John Edward, Defendants/Third Party Plaintiffs, | |
| v. | |
| Draka Comteq, B.V., Draka Comteq Fibre, B.V. f/k/a Plasma Optical Fibre, B.V., Plasma Optical Fibre, B.V., Draka Comteq Americas, Inc. And Draka Holding, N.V., Third Party Defendants. | |

**DEFENDANTS' OBJECTION TO MOTION TO DISMISS OF THE DRAKA THIRD PARTY DEFENDANTS**

Third Party Plaintiffs Ganda LLC a/k/a Ganda Communications and John Edward object to the Third Party Draka Defendants' Motion to Dismiss. The basis for the objection is that the allegations of the Third Party Complaint appropriately state a claim under Section 1 of the Sherman Act, 15 U.S.C. § 1. In particular, with respect to antitrust standing and antitrust injury, Ganda has alleged:

- Competition between Ganda and the Draka defendants for the sale of fiber optic products in the United States (Complaint, Paragraph 71);
- A *per se* conspiracy between YOFC and the Draka defendants to eliminate price competition from Ganda in the U.S. market (Complaint, Paragraphs 75, 76);
- The elimination of Ganda as a competitor as a direct result of the illegal conspiracy (Complaint, Paragraph 74);

- Relief for the Draka defendants from Ganda's downward price pressure and price competition being the object of the conspiracy (Complaint, Paragraphs 73, 74, 75);

- Direct action against Ganda as a part of the illegal conspiracy, including the constructive and actual termination of Ganda's rights to distribute fiber optic products in the U.S. (Complaint, Paragraph 75);

- Loss of all Ganda's business and sales as a direct and necessary consequence of the illegal price conspiracy (Complaint, Paragraphs 76, 77, 78).

As more fully discussed in Ganda's Memorandum of Law in Opposition to the Draka Defendants' Motion to Dismiss, these allegations more than satisfy applicable U.S. Supreme Court and First Circuit legal precedent. Draka's Rule 12(b)(6) Motion to Dismiss should be denied.

GANDA, LLC, a/k/a
GANDA COMMUNICATIONS and
JOHN EDWARD

By Their Attorneys,

Justin T. Shay (#2781)
CAMERON & MITTLEMAN LLP
56 Exchange Terrace
Providence, Rhode Island 02903
(401) 331-5700
FAX (401) 331-5787

Date: May 5, 2006

Of Counsel:

James L. Rogers, Jr., Esq.
Rebecca H. Zabel, Esq.
LEATHERWOOD WALKER TODD & MANN, P.C.
300 East McBee Avenue, Suite 500
P.O. Box 87
Greenville, SC 29602-0087
(864) 242-6440
FAX (864) 240-2477

**CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of May, 2006, a true copy of the within was sent, via first-class mail, postage prepaid, to the following:

Benjamin V. White, Esq.
Gordon P. Cleary, Esq.
Vetter & White, Inc.
20 Washington Place
Providence, RI 02903

Ira K. Gross, Esq.
Samual A. Miller, Esq.
Cherie Bosarge Dutton, Esq.
Sullivan & Worcester LLP
One Post Office Square
Boston, MA 02109

James L. Rogers, Jr., Esq.
Rebecca H. Zabel, Esq.
LEATHERWOOD WALKER TODD & MANN, P.C.
300 East McBee Avenue, Suite 500
P.O. Box 87
Greenville, SC 29602-0087

G:\cmc\Edward, J\pldgs\objection.doc

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| Yangtze Optical Fibre and Cable Company Ltd., Plaintiff, | |
| v. | Civil Action No. 04-474ML |
| Ganda, LLC a/k/a Ganda Communications and John Edward, Defendants/Third Party Plaintiffs, | |
| v. | |
| Draka Comteq, B.V., Draka Comteq Fibre, B.V. f/k/a Plasma Optical Fibre, B.V., Plasma Optical Fibre, B.V., Draka Comteq Americas, Inc. And Draka Holding, N.V., Third Party Defendants. | |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS**

On January 22, 1999, the Draka third party defendants[1] ("Draka Group") were angry at third party plaintiff Ganda's interference with Draka's efforts to sell optical fiber products in North America. Plasma Optic Fibre, B.V. ("POF"), a member of the Draka Group, had pitched the sale of fiber optic products to a potential customer, OCC. Instead of writing the order, however, POF discovered that it had unwanted competition – from Ganda! POF vented its anger to Yangtze Optical Fibre and Cable Company, Ltd. ("YOFC"):

> After the visit of Plasma Optical Fibre [ ] Ganda contacted [OCC] and promised him a revised quotation with better prices!!! . . .

[1] Comprising Draka Comteq, B.V.; Draka Comteq Fibre, B.V., f/k/a Plasma Optical Fibre, B.V.; Plasma Optical Fibre, B.V.; Draka Comteq Americas, Inc. and Draka Holding, N.V. Ganda believes that POF has been consolidated into the Draka group and may no longer exist as a separate entity.

POF demanded YOFC's cooperation in eliminating Ganda and its competing "better prices." POF stridently directed YOFC to:

[K]ill all commercial activities from Ganda towards our USA market.

YOFC followed POF/Draka's instructions precisely. YOFC eliminated Ganda from the U.S. market, thus ensuring Draka that it would no longer have to compete with Ganda's "better prices." Clearly, Draka/POF's urgent plea to YOFC acknowledges – and demands the elimination of – low price competition by Ganda.

On the basis of these facts, clearly asserted in its Complaint against the Draka Group,[2] Ganda asserts violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, the elements of which include a combination or conspiracy, in restraint of trade, that is either (a) *per se* illegal or (b) unreasonably and adversely restrictive of competition, causing the complaining party injury of a type the antitrust laws were designed to prevent. Ganda's Complaint more than adequately alleges these elements, as well as Ganda's right to sue for redress.

Dismissals in antitrust cases are not lightly granted, *Hospital Building Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 96 S.Ct. 1848 (1976); *McLain v. Real Estate Board of New Orleans, Inc.*, 444 U.S. 232, 100 S.Ct. 502 (1980). As the Supreme Court in those cases noted, an action should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which will entitle him to relief. In assessing the Motion by the Draka Group and YOFC to Dismiss, moreover, the Court must "accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the [non-moving party's] favor and determine whether the complaint, so read [may] justify recovery on any cognizable theory." *Morales-Villalobos v. Garcia-Llorens*, 316 F.3d 51 (1st Cir. 2003). The

[2] *See* defendant's Amended Answer, Counterclaim and Complaint against the Draka Defendants' (hereinafter, "Complaint against Draka"), paragraphs 48, 50, 51, 52, 61, 62, 65, 71, 73, 74, 75, 76, 77, 78 and Exhibit B to Complaint against Draka.

issue thus becomes "whether [Ganda's] Complaint [against the Draka Group] states a claim under the Sherman Act, assuming the factual allegations to be true and indulging to a reasonable degree a plaintiff who has not yet had an opportunity to conduct discovery." *Id.* at 53.

Application of that standard here can only lead to denial of the Draka Group's Motion to Dismiss.

The Draka Group's simplistic argument is that (1) an intermediary or middle man such as Ganda can never have antitrust standing, as a matter of law, and that (2) the destruction of a middle man's business, in order to eliminate price competition, does not constitute antitrust injury. Draka is wrong on both counts.

The Supreme Court substantively addressed antitrust standing and injury in *Blue Shield of Virginia v. McCready*, 457 U.S. 465, 73 L.E.D.2d 149, 102 S.Ct. 2540 (1982). As evident from a reading of that opinion, antitrust standing and antitrust injury, although separate elements, are intertwined. A plaintiff's standing depends on the relationship between the alleged illegal conduct and resulting injury and the proximity of the injury to that illegal conduct. Applying those factual inquires to the Ganda complaint against the Draka Group, the relevant inquiries become:

(1) whether Ganda's injury was proximately caused by the alleged illegal conduct; and

(2) whether the resulting injury is injury the type the antitrust laws were designed to prevent. *Brunswick Corp. v. Pueblo Bowl-o-Mat, Inc.*, 429 U.S. 477, 97 S.Ct. 690 (1979).

In *McCready, supra*, the Supreme Court explained the "expansive remedial purpose" of the private remedy provisions[3] of the antitrust statutes:

> Congress sought to create a private enforcement mechanism that would deter violators and deprive them of the fruits of their illegal actions, and would provide ample compensation to the victims of antitrust violations. ... The Statute does not confine its protection to consumers, or to purchasers, or to competitors, or to sellers .... The Act is comprehensive in its terms and coverage, protecting all who are made victims of the forbidden practices by whomever they may be perpetrated. 102 S.Ct. at 2544-2545.

The Court acknowledged that there may be persons whose injuries are too remote from the antitrust violation to afford them standing to sue, but cautioned against narrowing standing "in ways that will defeat [the statute's] broad remedial objective." *Id.*, 102 S.Ct. at 2547. The appropriate test, according to the Court, mirrors proximate cause, with two defining considerations:

> (1) ... [T]he physical and economic nexus between the alleged violation and the harm to the plaintiff, and (2), more particularly, the relationship of the injury alleged with those forms of injury about which Congress was likely to have been concerned in making defendant's conduct unlawful and providing a private remedy....

The Court abbreviated the test into one overarching consideration, namely, whether the alleged injury is an integral aspect of the conspiracy alleged.[4] "The injury should reflect the anti-competitive effect either of the violation or of anti-competitive acts made possible by the violation."[5] The plaintiff's injury in *McCready*, even under the Court's analysis, was more

---

[3] Section 4 of the Clayton Act provides a trebled damage remedy for antitrust violations to "[any] person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws."

[4] *McCready, supra*, 102 S.Ct. at 2548.

[5] *Id.*, 102 S.Ct. at 2550.

remote from the wrongful conduct [alleged] in that case than the injury Ganda suffered as a direct result of Draka's and YOFC's price stabilization conspiracy.

In *McCready, supra*, the plaintiff's employer purchased a plan of insurance for its employees (including McCready) from Blue Shield. Because of an arrangement between an association of psychiatrists and Blue Shield, psychologists' services were not reimbursed under the insurance plan. McCready, a consumer of psychologists' services, claimed violations of Section 1 of the Sherman Act. Arguing that McCready did not select the plan of coverage; that she was not foreclosed from obtaining psychologists' services; that no psychologists went unpaid; and that McCready's injury was the result of her employer's choice, the defendants challenged plaintiff's standing. The Court rejected the defendants' argument, observing that McCready's injury, namely, the requirement that she bear the total cost of psychologists' services, was the proximate and foreseeable result of the alleged conspiracy between Blue Cross and the psychiatrists to exclude psychological services from reimbursement.

The nexus between Ganda's injury and the alleged illegal conspiracy between the Draka Group and YOFC is more immediate than that described by the Supreme Court in *McCready, supra*. As alleged in the Complaint against Draka, Ganda competed against Draka for sales of fiber optic products in the United States.[6] Ganda was exerting low price pressure and had to be eliminated to protect Draka's prices.[7] Ganda's elimination was the intended outcome,[8] and its injury the foreseeable and proximate result[9] of the alleged illegal conspiracy between Draka and YOFC to stabilize fiber optic prices. The destruction of Ganda's business was the direct result –

6 Complaint against Draka, Paragraph 71.

7 Complaint against Draka, Paragraph 73.

8 Complaint against Draka, Paragraphs 73, 74, 75.

9 Complaint against Draka, Paragraphs 74, 75.

indeed it was the target – of the alleged illegal conspiracy. Draka/POF in fact demanded that YOFC "kill all commercial activities from Ganda…."[10] As the Supreme Court remarked in the *McCready* case, "a dampening of competitive market forces [to increase prices] is assuredly one type of [antitrust injury]."[11] Ganda has standing, and its injury is antitrust injury.[12]

The conclusion the Court reached in *McCready* is unsurprising, reflecting a rich history of claims by intermediaries alleging antitrust violations. Most common are the innumerable dealer termination cases, in which market intermediaries allege that their termination resulted from illegal conspiracies. In its 1984 decision in *Monsanto Corp. v. Spray-Rite Service Corp.*, 465 U.S. 752, 104 S.Ct. 1464, the Court discussed that history, which continues today in the First Circuit and elsewhere.

In *Caribe BMW, Inc. v. Bayerische Motoren Werke Aktiengesellschaft*, 19 F.3d 745 (1st Cir. 1994), a market "intermediary" achieved antitrust standing and asserted antitrust injury. The plaintiff dealer alleged a conspiracy between the manufacturer and a supplier to limit the maximum price at which BMWs could be sold by dealers. The dealer was forced to comply or his dealer agreement would be terminated.[13] The threat of termination, the Court observed, might prevent a dealer from providing services that a customer might want or need and would

---

10 Complaint against Draka, Paragraph 73, Exhibit B.

11 *McCready, supra*, 102 S.Ct. at 2550.

12 This conclusion is consistent with the observation of both the majority and the dissent in *McCready* that a distributor (*i.e.*, an intermediary or a middle man) denied a competitive opportunity as the result of an illegal conspiracy unquestionably has standing to sue. *McCready, supra*, 102 S.Ct. at 2551 (majority) and 2554 (dissent).

13 At the time of the case, *Caribe* conspiracies or agreements to set maximum resale prices were *per se* illegal under the Supreme Court's 1968 decision in *Albrecht v. Herald Co.*, 390 U.S. 145, 88 S.Ct. 869 (1968). In 1997, the Supreme Court removed ***maximum*** resale price maintenance from the category of *per se* illegal restraints, *State Oil Co. v. Kahn*, 522 U.S. 3, 118 S.Ct. 275 (1997). However, ***minimum*** price setting conspiracies such as that alleged here remain *per se* illegal. *Doctor Miles Medical Co. v. John D. Park & Sons Co.*, 220 U.S. 373, 31 S.Ct. 376 (1911); *Monsanto Corp. v. Spray-Rite Service Corp.*, *supra.*

result, upon culmination, in fewer dealer choices for consumers. Indeed, the First Circuit observed, "Caribe is the very firm that the alleged maximum resale price fixing agreement forced to keep its price below the level it preferred to set."[14] Similarly, as evident in the communication between Draka/POF and YOFC,[15] Ganda is the very firm that the alleged price fixing collusion forced from the market. Caribe's Complaint alleged antitrust harm and supported standing, just as Ganda's Complaint alleges antitrust harm and supports standing.

Also supportive of Ganda's position is the First Circuit's decision in *Engine Specialties, Inc. v. Bombardier Limited*, 605 F.2d 1 (1979). In facts closely analogous to those alleged by Ganda in its Complaint against Draka, the *Bombardier* case involved a conspiracy between two manufacturers and a complaining, adversely affected intermediary or dealer.

The plaintiff Engine Specialties, Inc.("ESI") and Agrati entered into an exclusive distributor arrangement, under which ESI was appointed Agrati's exclusive North American minicycle distributor. Eventually, Bombardier and Agrati entered into a marketing arrangement that essentially required ESI's elimination from the market. When ESI's contract was terminated, the jilted intermediary alleged a *per se* illegal conspiracy to divide markets. After a jury rendered a verdict in favor of ESI, the defendants challenged proof of antitrust injury.[16] The Court held that ESI had introduced evidence of anticompetitive behavior by the defendants,

---

14 *Caribe, supra*, 19 F.3d at 753.

15 Complaint against Draka, Exhibit B.

16 Aspects of the antitrust injury issue were couched in standing terms, but the Court addressed the issue as antitrust injury. According to the defendants, ESI would have suffered exactly the same injury had Agrati simply replaced one exclusive dealer with another exclusive dealer. Thus, they reasoned, ESI's injury was not causally linked to the alleged illegal market dividing collusion. The Court disagreed, citing ESI's factual demonstration that the defendants had "illegally conspired to allocate markets between themselves [and], as a necessary consequence, had determined to eliminate ESI as a competitor at the same time." *Engine Specialties, Inc., supra*, at 14.

"linked to the antitrust evil."[17] Citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 89 S.Ct. 1562 (1969), the First Circuit observed that "plaintiffs need not prove that the antitrust violation was the sole cause of their injury, but only that it was a material cause."

Under the facts alleged in Ganda's Complaint against the Draka Group, there can be no question but that antitrust injury and standing are adequately alleged.

Ganda has alleged:

- Ganda competed with the Draka Group, offering fiber optic products at lower prices (Complaint, paragraph 71);

- YOFC and Draka conspired to eliminate downward pressure on prices for fiber optic products in the United States (Complaint, Paragraphs 73, 75);

- Draka demanded, and YOFC agreed, to "kill" low price competition from Ganda; Ganda was the target of the conspiracy (Complaint, Paragraphs 73, 74);

- YOFC complied, ceased performing under its exclusive distribution agreement with Ganda, and finally terminated the agreement (Complaint, Paragraphs 49, 51, 52, 61, 62);

- As a result of YOFC's performance of the illegal agreement, competition from Ganda was eliminated (Complaint, Paragraphs 75, 76, 77);

- Ganda was proximately injured as a result of the illegal conspiracy, in that its lost its business and was in fact removed as a competitor from the market (Complaint, Paragraph 78).

Under the Supreme Court's decision in *Blue Shield of Virginia v. McCready, supra*, and First Circuit authority in *Caribe BMW, Inc. v. Bayerische Motoren Werke Aktiengesellschaft, supra*, and *Engine Specialties, Inc. v. Bombardier Limited, supra*, at least, the adequacy of Ganda's pleading is evident.

---

[17] *Id.* at 14.

In an effort to bootstrap its illogical pronouncement that no intermediary can achieve antitrust standing, the Draka Group raises the specter of multiple recoveries. Might a theoretical purchaser, who realizes he might have purchased at a lower price from Ganda, be expected to vindicate the antitrust laws? In the *McCready* case, *supra*, the Supreme Court acknowledged the private enforcement scheme embodied in the antitrust laws, and the importance of requiring violators to "disgorge the fruits of their illegality."[18] Notwithstanding the *McCready* plaintiff's relative distance from the illegal conspiracy, her injury was unique. As in *McCready*, Ganda's injury is unique. An injured purchaser could, theoretically, seek recovery of the difference between the price it would have paid, had Ganda remained in the market, and the price it was forced to pay upon Ganda's removal. But that is not Ganda's injury. Ganda's injury is the destruction of its business, the loss of all fiber optic sales, because it was "kill[ed]" as a competitor in the market.[19] Ganda is clearly an appropriate plaintiff, seeking remediation of the unique injury that Draka's and YOFC's illegal conspiracy caused it.

Draka cites *SAS of Puerto Rico, Inc. v. Puerto Rico Telephone Company*, 48 F.3d 39 (1st Cir. 1995), in support of its position. Draka's confidence is misplaced. In the *SAS* case, the First Circuit acknowledged that "the presumptively 'proper' plaintiff is a customer who obtained services in the threatened market *or a competitor who seeks to serve that market*."[20] In *SAS*, the plaintiff was truly on the fringes of the antitrust violation, rather than, as Ganda, the direct target of the conspiracy. The SAS plaintiff looked forward to upgrading pay telephones in certain markets in Puerto Rico. The upgrades would allow greater competition between long distance service providers, but SAS itself did not provide long distance services. The alleged conspiracy

18 *McCready*, 102 S.Ct. at 2545.

19 *See also, Chemi SPA v. GlaxoSmithKline*, 356 F.Supp.2d 495 (E.D.Pa. 2005) at 502.

20 *SAS, supra*, at 44, *emphasis added.*

dealt not with providing pay telephones, but with an alleged attempt to restrain competition in long distance services in Puerto Rico. The Court properly concluded that SAS was neither a customer who bought those services, nor a competitor who offered them. By contrast, Ganda is, in the language of *SAS*, "a competitor who seeks to serve the market." Draka/POF in fact complained that Ganda offered the same products, but at better prices, than Draka/POF. That is the hallmark of a competitor.

Nor does *RSA Media, Inc. v. AK Media Group, Inc.*, 260 F.3d 10 (1st Cir. 2001), provide support for Draka's position. In that case, a highly developed regulatory scheme frustrated the plaintiff's attempts to prove antitrust injury and standing. No overarching regulatory scheme is evident in this action. In *O.K. Sand & Gravel, Inc. v. Martin-Marietta Technologies, Inc.*, 36 F.3d 565 (7th Cir. 1994), on a fully developed trial record and a jury verdict, the Court held that proof of causation was lacking. In sharp contrast, Ganda has alleged causation, and this is a Motion to Dismiss. The allegations of the Complaint must be accepted as true, *Morales-Villalobos v. Garcia-Llorens, supra,* and *O.K. Sand & Gravel* is inapplicable. The plaintiff in *Fischer v. NWA, Inc.*, 833 F.2d 594 (8th Cir. 1989), also cited by the Draka defendants, failed on summary judgment to present evidence of a conspiracy, as well as antitrust injury. Without evidence of conspiracy, the Eighth Circuit concluded, there was no evidence on which a jury could have concluded that the damage a regional carrier suffered when Northwest Airlines terminated its contract was in any way connected to the alleged anticompetitive effects of Northwest's merger with Republic Airlines. Again, the contrast with the instant action is evident. We are at the Motion to Dismiss stage. Ganda has alleged an illegal conspiracy between YOFC and the Draka Group to eliminate Ganda's low price competition, and the

resulting and inevitable elimination of Ganda's business and loss of sales resulting from that illegal activity.

Most surprising, perhaps, is the Draka Group's citation of *Serpa Corporation v. McWane, Inc.*, 14 F. Supp. 2d 147 (D. Mass 1998). Although denying the plaintiff standing, the Court acknowledged two alternate grounds for standing, both of which Ganda satisfies. First, the Court explained:

> A distributor may also have standing to sue a manufacturer in the context of illegal distribution restraints. Distribution restraints directly limit the freedom of dealers to choose their own resale prices, territories, or customers, and may involve forcing intermediaries to participate in illegal conduct. A dealer terminated for failing to comply with the illegal restraint has standing to seek ... damages. *See Caribe BMW, Inc. v. BMW Aktiengesellschaft, [supra]*.... [W]ithin this category, only those distributors whose prices are actually restrained have standing to sue. *Serpa,* 14 F. Supp. 2d at 150.

In addition to intermediary standing based on illegal distribution restraints, the Court in *Serpa* acknowledged an additional basis for intermediary standing under the Supreme Court authority of *McCready, supra:*

> [I]n certain circumstances, the elimination of an intermediary effectively destroys competition. In such cases, the distributor's knowledge or authority makes it an integral part of the competitive structure and its injury is heavily intertwined with the core injury perpetrated by antitrust violators. To deny standing to the intermediary is to sanction the diminution of competition where it matters the most. *Serpa,* 14 F. Supp. 2d at 152.

While the *Serpa* court's description of the limits of intermediary standing appears narrower than that described by the First Circuit in *Caribe, supra,* and in *Engine Specialties, supra,* the matter is immaterial in this instance. Ganda's Complaint against the Draka Group satisfies standing requirements under *McCready, Caribe, Engine Specialties,* or *Serpa.* Ganda has alleged that the Draka Group and YOFC colluded to restrain Ganda's prices by eliminating it from the market or, as the communication between them indelicately demanded, "kill[ing]"

competition from Ganda. The illegal conspiracy to "kill" Ganda effectively eliminated a lower price source of fiber optic products in the United States. In *Serpa* terms, a *per se* illegal distribution restraint directly forced Ganda to restrain its price competition; in *McCready* terms, the elimination of Ganda effectively destroyed low price competition.

## CONCLUSION

All elements of a Sherman Act Section 1 violation, both *per se* and rule of reason, are alleged in Ganda's Complaint against the Draka Group and Counterclaims against YOFC. Ganda was not just an unintended victim of the conspiracy between the Draka Group and YOFC to eliminate low price competition; it was the primary target. Ganda had to be eliminated from the market, and, by necessity, its potential to make future sales had to be quashed. YOFC and the Draka Group succeeded in accomplishing the feat demanded in the January 22, 1999 communication between them: Their conspiracy "kill[ed] all commercial activities of Ganda." Standing and antitrust injury are more than adequately alleged.

The Motion to Dismiss by the Draka Group and YOFC should be denied. In the alternative, should Ganda's Complaint against the Draka Group be adjudged deficient in any fashion, Ganda requests an opportunity to amend, pursuant to Rule 15, Federal Rules of Civil Procedure.

GANDA, LLC, a/k/a
GANDA COMMUNICATIONS and
JOHN EDWARD

By Their Attorneys,

Justin T. Shay (#2781)
CAMERON & MITTLEMAN LLP
56 Exchange Terrace
Providence, Rhode Island 02903
(401) 331-5700
FAX (401) 331-5787

Date: May 5, 2006

Of Counsel:

James L. Rogers, Jr., Esq.
Rebecca H. Zabel, Esq.
LEATHERWOOD WALKER TODD & MANN, P.C.
300 East McBee Avenue, Suite 500
P.O. Box 87
Greenville, SC 29602-0087
(864) 242-6440
FAX (864) 240-2477

**CERTIFICATE OF SERVICE**

I hereby certify that on this 5TH day of May, 2006, a true copy of the within was sent, via first-class mail, postage prepaid, to the following:

Benjamin V. White, Esq.
Gordon P. Cleary, Esq.
Vetter & White, Inc.
20 Washington Place
Providence, RI 02903

Ira K. Gross, Esq.
Samual A. Miller, Esq.
Cherie Bosarge Dutton, Esq.
Sullivan & Worcester LLP
One Post Office Square
Boston, MA 02109

James L. Rogers, Jr., Esq.
Rebecca H. Zabel, Esq.
LEATHERWOOD WALKER TODD & MANN, P.C.
300 East McBee Avenue, Suite 500
P.O. Box 87
Greenville, SC 29602-0087

G:\cmc\Edward, J\pldgs\memomodismiss.doc