UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

YANGTZE OPTICAL FIBRE
and CABLE COMPANY, LTD.,
Plaintiff/Counterclaim Defendant,

v. CA 04-474 ML

GANDA, LLC, a/k/a GANDA
COMMUNICATIONS and JOHN
EDWARD,
Defendants/Third Party Plaintiffs,

v.

DRAKA COMTEQ B.V.,
DRAKA COMTEQ FIBRE B.V.,
PLASMA OPTICAL FIBRE B.V.,
DRAKA COMTEQ AMERICAS INC.,
DRAKA HOLDING N.V.
Third Party Defendants.

MEMORANDUM AND ORDER

This matter is before the Court on the Motion to Dismiss Counterclaims filed by Plaintiff/Counterclaim Defendant Yangtze Optical Fibre and Cable Company Ltd. ("YOFC") and Third Party Defendants Draka Comteq B.V., Draka Comteq Fibre B.V., Plasma Optical Fibre B.V. ("POF"), Draka Comteq Americas Inc., and Draka Holding N.V.[1] (collectively, "Draka") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons stated below, the Motion to Dismiss Ganda's antitrust counterclaim is denied.

---

[1]Alerted to the misidentification of the Draka Defendants in Ganda's filings, the Court will use the names submitted by Draka.

## I. Standard of Review

In reviewing a motion to dismiss filed pursuant to Rule 12(b)(6), "a court must take the allegations in the plaintiff's pleadings as true and must make all reasonable inferences in favor of the plaintiff." Rivera v. Rhode Island, 402 F.3d 27, 33 (1st Cir. 2005)(citing Pena-Borrero v. Estremeda, 365 F.3d 7, 11 (1st Cir. 2004)). Dismissal is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Rivera, 402 F.3d at 33 (internal quotation marks and citation omitted).

"[I]n antitrust cases, where the proof is largely in the hands of the alleged conspirators, dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly." Hosp. Bldg. Co. v. Trs. of Rex Hosp., 425 U.S. 738, 746 (1976)(internal quotation marks and citation omitted).

## II. Facts

YOFC is a corporation organized and existing under the laws of the People's Republic of China with its principal place of business in Wuhan, China. YOFC's business is the development, manufacture, and sale of optical fiber and cable products. Ganda is a limited liability company organized and existing under the laws of Delaware with its primary place of business in Cranston, Rhode Island. In June 1998, YOFC and Ganda contracted for Ganda to act as exclusive sales agent for YOFC as part of YOFC's efforts to expand into the North American market. Under the agreements existing between YOFC and Ganda between 1998 and 2003, Ganda was to receive a commission from sales of YOFC products. By the summer of 2002, relations between YOFC and Ganda had broken down, and each side communicated to the other

its desire to terminate the relationship.

YOFC filed a Complaint with this Court on November 8, 2004, alleging breach of contract (count I), money had and received/unjust enrichment (count II), account stated (count III), actual fraudulent conveyance (count IV), and constructive fraudulent conveyance (count V). YOFC claims Ganda owes it $2,561,718.09.

On February 17, 2006, Defendants Ganda and Edward (collectively, "Ganda") filed an Amended Answer in which they set forth claims against YOFC and Third Party Defendants Draka. As to YOFC only, Ganda counterclaimed breach of contract and breach of contract accompanied by a fraudulent act. Ganda then charged YOFC and Draka with violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, and Section 4 of the Clayton Act, 15 U.S.C. § 15, as well as tortious interference with contractual relations. By way of grounding its antitrust claims, Ganda alleges that Draka was a competitor of both YOFC and Ganda in the fiber optic cable market during the relevant time period. Ganda further claims that the two competitors, Draka and YOFC, acted in concert to eliminate competition from Ganda. Specifically, Ganda points to a January 22, 1999 fax between POF, a Draka subsidiary, and YOFC, in which POF directs YOFC to "kill all commercial activities from Ganda towards our USA market." (Defs.' Am. Answer Ex. B.) The fax indicates that Ganda had approached a POF client and offered him "a revised quotation with better prices" than POF had offered for YOFC cable. (Id.) Ganda then alleges its elimination from the market was accomplished after a meeting of the YOFC board of directors on April 19 and 20, 2000. The minutes of that meeting indicate that YOFC and POF planned to discuss "the division of the international market between [YOFC] and POF" and "coordination with POF on the Latin American market, and that the parties discuss and submit a

better method on the issue of Ganda." (Defs.' Am. Answer Ex. C.)

Draka and YOFC move in concert for this Court to dismiss the antitrust counterclaims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Ganda has filed an Objection to this Motion.

III. Analysis

In its counterclaim, Ganda asserts that Draka and YOFC engaged in a conspiracy to eliminate price competition from Ganda, a per se violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Alternatively, Ganda argues that the conspiracy between YOFC and Draka is an unreasonable restraint on competition within the relevant market it described in the Amended Answer in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Ganda appeals to Section 4 of the Clayton Act, 15 U.S.C. § 15, to establish its right to recover the damages resulting from the antitrust conduct of Draka and YOFC. This section provides for a private cause of action for violations of the federal antitrust laws:

> [A]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor . . . , without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

15 U.S.C. § 15(a).

In their Motion to Dismiss Counterclaims, Draka and YOFC argue that Ganda lacks antitrust standing because it is neither a competitor nor a customer in the market. Draka and YOFC also posit that Ganda has failed to allege an "antitrust injury" of the kind that the Sherman and Clayton Acts were meant to address. In its Objection to the Motion to Dismiss, Ganda asserts that a sales agent is not precluded from asserting antitrust violations, and that it has in fact suffered antitrust injuries.

**1. Antitrust Standing**

The doctrine of antitrust standing is distinct from the doctrine of standing in general, which is required of all claimants to a civil action. The Supreme Court has articulated a detailed antitrust standing doctrine. See Associated Gen. Contractors of Cal., Inc., v. Cal. State Council of Carpenters, 459 U.S. 519, 529-35 (1983); Blue Shield of Va. v. McCready, 457 U.S. 465, 477, (1982). There are six nonexclusive factors to consider in determining whether a claimant has antitrust standing: (1) the causal connection between the alleged antitrust violation and harm to the plaintiff; (2) an improper motive; (3) the nature of the plaintiff's alleged injury and whether the injury was of a type that Congress sought to redress with the antitrust laws ("antitrust injury"); (4) the directness with which the alleged market restraint caused the asserted injury; (5) the speculative nature of the damages; and (6) the risk of duplicative recovery or complex apportionment of damages. Arroyo-Melecio v. Puerto Rican Am. Ins. Co., 398 F.3d 56, 72 (1st Cir. 2005); Associated Gen. Contractors, 459 U.S. at 537-45. In each case, a court must consider the balance of factors in an effort to guard against "engraft[ing] artificial limitations" on the antitrust remedy. Sullivan v. Tagliabue, 25 F.3d 43, 46 (1st Cir. 1994)(quoting McCready, 457 U.S. at 472).

**A. Antitrust Injury**

It is important to distinguish here between the "antitrust injury" a plaintiff must allege to successfully establish antitrust standing and the anti-competitive market effect element of a Sherman Act claim, which is also frequently referred to as "antitrust injury." Angelico v. Lehigh Valley Hosp., Inc., 184 F.3d 268, 275 n.2 (3d Cir. 1999). Despite Draka/YOFC's assertion to the contrary, for purposes of a standing inquiry, the proper question is not whether the complaining

party has alleged the elements of a per se, rule of reason, or other antitrust claim, but rather, whether that party has alleged an injury to itself that is a matter of antitrust concern. McCready, 457 U.S. at 482 (finding that plaintiff was not required to allege anti-competitive market effect of the alleged violation to establish antitrust injury).

While "antitrust injury" is just one of the factors in the required analysis for antitrust standing, it is arguably the most important, as "the absence of antitrust injury weighs heavily against a grant of standing." Sullivan, 25 F.3d at 47. The Supreme Court has defined "antitrust injury" in the standing context as an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." Serpa Corp. v. McWane, Inc., 199 F.3d 6, 10 (1st Cir. 1999)(quoting Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489 (1977). The Supreme Court also elaborated, in an often-quoted explanation, "[t]he antitrust laws . . . were enacted for 'the protection of competition not competitors.'" Brunswick, 429 U.S. at 488 (quoting Brown Shoe Co. v. United States, 370 U.S. 294, 320 (1962)).

The crux of the Draka/YOFC argument is that Ganda has failed to allege antitrust injury because it was a mere sales agent of YOFC's product, and not a competitor, or for that matter, a distributor. Draka and YOFC assert that while a distributor may suffer antitrust injury, "a mere sales agent may not." (Pls.' and Countercl. Defs.' Reply 6.) The cases cited in support of this contention do not, however, assert the proposition so clearly as Draka and YOFC would like; rather they maintain that while some plaintiffs are presumptively favored, that presumption can give way for good cause. See, e.g., Serpa, 199 F.3d at 12.

Moreover, while Ganda might well be a sales agent rather than a distributor, there are no shortcuts for determining whether it has suffered an antitrust injury through a simple

characterization of its role in the relevant market. The First Circuit has indeed labeled competitors and consumers as favored plaintiffs in antitrust cases, and employees, stockholders, creditors, and landlords as presumptively disfavored plaintiffs, SAS of Puerto Rico, Inc. V. Puerto Rico Tel. Co., 48 F.3d 39, 45 (1st Cir. 1995); however, the inquiry must still center on whether or not the complaining party suffered a sufficiently direct injury as a result of the alleged antitrust violation, Serpa, 199 F.3d at 11 ("[A] commercial intermediary, such as a distributor or sales representative, generally lacks standing because its antitrust injury is too remote."). The analysis is multifaceted because "the variety of situations [is] endless." SAS, 48 F.3d at 43. For this reason, the same court that articulated the pecking order of favored and disfavored plaintiffs ultimately concluded that "[i]t is not surprising that no simple rule has emerged for choosing the best antitrust plaintiff and deciding when second-best plaintiffs should be barred." Id. at 44.

In this case, Ganda has alleged that Draka and YOFC competed with each other for fiber optic sales in the North American market during the relevant time period. (Def.'s Am. Answer ¶ 71.) Ganda also alleges that it competed with both entities for the same sales in the United States market. (Id.) Ganda asserts that YOFC, while primarily a manufacturer of fiber optic cable, "directly solicited Ganda's clients to provide fiber optical products." (Id. at ¶ 82.) In this way, Ganda contends, the three companies were competitors in the same market until YOFC and Draka conspired to eliminate Ganda's participation. Draka/YOFC's contention that Ganda, as a seller who did not manufacture fiber optical products, was not therefore a competitor, misses the point; it is YOFC that, by dealing directly with customers of its products, became Ganda's competitor in sales.

As support for its allegations of conspiracy, Ganda attaches a fax sent by POF, a Draka subsidiary, to YOFC requesting that YOFC "assist" POF by "kill[ing] all commercial activities

from Ganda towards our USA market." (Defs.' Am. Answer Ex. B.) The fax indicates that Ganda had approached a POF client and offered it "a revised quotation with better prices" for YOFC cable. Id. Ganda also attaches the minutes of the April 19-20, 2000 YOFC board meeting, which indicate that YOFC and POF planned "coordination . . . on the Latin American market, and that the parties discuss and submit a better method on the issue of Ganda." (Defs.' Am. Answer Ex. C.) While this statement may not conclusively indicate a conspiracy among competitors, it does raise the inference that YOFC and Draka coordinated a response to the presence of Ganda in the market, a classic anti-competitive act. YOFC and Draka might argue they were within their rights as joint venture partners to so collaborate, but this argument goes to the substantive question of whether the conduct was in fact an antitrust violation, a merits question that goes beyond the scope of an antitrust standing inquiry. McCready, 457 U.S. at 482; Morales-Villalobos v. Garcia-Llorens, 316 F.3d 51, 55 (1st Cir. 2003)(reversing dismissal of Sherman Act complaint over defendants' arguments that the exclusive dealing arrangement and plaintiff's exclusion were justified by business reasons).

Draka and YOFC's arguments concerning the appropriateness of their conduct within the joint venture context suffer all the more because the exact nature of the Draka/YOFC partnership has not been revealed to the Court. In fact, neither party has made straightforward representations about the extent and duration of the Draka/YOFC partnership. Ganda excludes the fact entirely from its pleadings. Draka/YOFC bury in a footnote to their Reply that YOFC is a joint venture between Draka and "certain Chinese entities," all the while disclaiming that this fact is relevant or necessary for the disposition of the instant Motion. (Pls.' and Countercl. Defs.' Reply 3 n.4.) In fact, the precise nature of the relationship between Draka and YOFC is relevant, as it would indicate whether, through its activities with Draka, YOFC is vertically integrating its

distribution and manufacturing channels, or if it is indeed colluding with a competitor to eliminate another competitor, as Ganda alleges.

While Ganda's allegations delineate only the faintest outline of an antitrust violation, that outline indeed conveys the image of competitors aligning against another competitor to cut it out of the market, a classic anti-competitive scenario. Without knowing more, assuming the facts to be as the nonmoving party alleges them, and making all reasonable inferences in its favor, it is impossible for this Court to say that no set of facts consistent with these allegations exist that would result in relief for Ganda. Draka/YOFC may argue that their cooperation is perfectly legal within the bounds of the joint venture (Pls.' and Countercl. Defs.' Mot. to Dismiss 8), but that argument goes to the merits question of whether the arrangement is a violation of the antitrust laws and not to whether Ganda is a proper party to vindicate these claims, which is the Court's sole concern here. Morales-Villalobos, 316 F.3d at 55.

**B. The Remaining Antitrust Standing Factors**

As to the first factor, the causal connection between the alleged antitrust violation and harm to the complainant, Ganda alleges that the conspiracy between YOFC and Draka (the alleged antitrust violation) led directly to the elimination of Ganda from the United States fiber optics market (the alleged harm to Ganda) through termination of its exclusive sales agreement with YOFC. If indeed the conspiracy to eliminate Ganda functioned as Ganda alleges, the first factor weighs in favor of a finding of standing.

As to the second factor, an improper motive, because the Motion at hand is filed pursuant to Fed. R. Civ. P. 12(b)(6), the Court can accept factual allegations from Ganda from which it may infer bad motive, that is, that the Defendants acted in concert and with an anti-competitive

motive. This factor, then, weighs in favor of a finding of standing.

The third factor, the nature of the plaintiff's alleged injury and whether the injury was of a type that Congress sought to redress with the antitrust laws ("antitrust injury"), has been discussed above, and weighs toward a finding of standing.

The fourth factor, the directness with which the alleged market restraint caused the asserted injury, also weighs in favor of finding standing. Ganda alleges Draka and YOFC conspired to eliminate competition from Ganda, an antitrust violation that affected Ganda immediately. Because Ganda was the targeted competitor, according to its allegations, and the termination of its contract with YOFC was necessary to remove the price competition it provided, the harm to Ganda was directly caused by the market restraint. This is a classic favored claim, where "the seller is a participant in the very market where competition is impaired." SAS, 48 F.3d at 44. In this case, the alleged injury to Ganda was not merely an indirect or remote consequence of YOFC/Draka's conduct, but rather was precisely the intended consequence of the alleged wrongdoing.

As for the fifth factor, the speculative nature of the damages, Ganda's allegations do not include specific damages calculations. Rather, Ganda claims generally that it is "entitled to recover all of its actual damages from the co-conspiratorial defendants . . . ." (Defs.' Am. Answer ¶ 78.) It does not seem too far-fetched to imagine an expert testifying to the probable loss to Ganda for the time remaining in its contract with YOFC, and a fact-finder resolving the issue. After all, a fact-finder may permissibly act on probable and inferential as well as direct and positive proof in estimating lost profit damages. Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 124 (1969). This factor, then, also weighs in favor of a finding of standing.

Finally, considering the sixth factor, the risk of duplicative recovery or complex

apportionment of damages, this factor also indicates a finding of standing. The concern motivating this factor is that other players in the market will also protest the purported antitrust violation, and the violators will be subject to multiple recoveries. Ill. Brick Co. v. Illinois, 431 U.S. 720 (1977)(holding that damages could not be recovered by indirect purchasers of concrete blocks who had paid an enhanced price because their suppliers had been victimized by a price-fixing conspiracy; finding that potential plaintiffs at each level in the distribution chain would be in a position to assert conflicting claims to a common fund, the amount of the alleged overcharge, thereby creating the danger of multiple liability for the fund and prejudice to absent plaintiffs). As the Supreme Court has explained it, "[t]he existence of an identifiable class of persons whose self-interest would normally motivate them to vindicate the public interest in antitrust enforcement diminishes the justification for allowing a more remote party . . . to perform the office of a private attorney general." Associated Gen. Contractors, 459 U.S. at 542. Here, it is difficult to imagine other potential plaintiffs with the proper incentive to vindicate the antitrust laws as to Ganda's loss. Customers of fiber optic cable manufactuers/distributors suffering the higher prices created by the loss of competition might be sufficiently motivated, but they would challenge the raised prices, not the loss of Ganda's business. As to Ganda's injury, there is no other motivated complainant. Therefore, the specter of multiple recoveries for that particular injury is removed.

Ultimately, as the Court balances these factors, it finds that they all indicate a finding of antitrust standing for Ganda. Because Ganda's factual allegations sufficiently describe antitrust injury and establish the rest of the standing factors, Ganda may proceed with the antitrust claims.

**2. Waiver of Objection as to YOFC's Motion to Dismiss**

In their Reply to Defendants' Opposition to Motion to Dismiss Ganda's Antitrust Counterclaim, YOFC and Draka argue that Ganda has waived any objection as to YOFC's Motion to Dismiss by not naming YOFC in its Objection. Ganda's Objection indeed only addresses the Draka Defendants, an error which Ganda attempted to correct by submitting an Amended Objection on May 10, 2006, 5 days after the agreed-upon deadline for any objection to the Motion to Dismiss. Even were the Court to reject the untimely amendment to the Objection, the fact that a motion to dismiss is unopposed does not relieve the court of the obligation to examine the complaint itself to see whether it is formally sufficient to state a claim. Pomerleau v. W. Springfield Pub. Sch., 362 F.3d 143, 145 (1st Cir. 2004)(citation omitted). Draka and YOFC's waiver argument is therefore unavailing.

IV. Conclusion

For the foregoing reasons, Plaintiff YOFC and Third Party Defendants Draka's Motion to Dismiss is DENIED.

SO ORDERED:

Mary M. Lisi

Mary M. Lisi
United States District Judge
June 9, 2006