FILED
2003 APR 21 AM 10: 26
NEW HANOVER COUNTY, C.S.C.
BY CAJ

STATE OF NORTH CAROLINA
COUNTY OF NEW HANOVER

IN THE GENERAL COURT OF JUSTICE
DISTRICT COURT DIVISION
FILE NO.: 02 CVD 3894

ANN EDWARD,
Plaintiff,

v.

JOHN EDWARD,
Defendant.

REPLY TO MOTION FOR CONTEMPT; MOTION FOR REDUCTION OR ELIMINATION OF POST SEPARATION SUPPORT

NOW COMES Defendant, through counsel, replying to the Motion For Contempt, and shows unto the Court as follows:

1. That a verbal Order for Post Separation Support was enter in open Court in this matter on December 9, 2002 which required Defendant to pay to Plaintiff the sum of $4,400.00 per month in post-separation support retroactive to December 1, 2002, and which required Defendant to pay post separation support for the months of October and November 2002 no later than September 1, 2003 with interest at the legal rate of eight percent (8%).

2. In spite of the Order that was verbally entered on December 9, 2002 (which has still not been reduced to writing), Defendant has paid December, 2002 and January and February, 2003 payments. In addition, Defendant prepaid October and November, 2002 in good faith in order to try to pay Plaintiff what the Court ordered. Since the beginning of February 2003, Defendant has lost his consulting contract with ASI Silica

Machinery and no longer has $6,000.00 per month in income. Enclosed as Exhibit "A" and incorporated herein is a letter terminating any further presentations by Global Fiber Technology for ASI Silica Machinery. The down turn in the fiber market has absolutely ruined all representation for sales in this area at the present time. As a consequence, Defendant's income has been reduced to the amount of his Corning pension which is $2,385.61 per month of which $997.95 is required to pay the mortgage on the marital residence. Defendant no longer has the ability to pay $4,400.00 per month because his total income has been reduced to approximately $2,300.00 per month. In addition, Defendant is now engaged in litigation with Yangtze Optical Fiber and Cable Limited in connection with the monies that are being held in the Ganda LLC bank accounts. The monies being held there do no belong to Ganda LLC and Defendant does not has the use or access of this money. Currently, there is 2.65 million being held with about $2.9 million possibly due and owing as a result of this litigation which includes income taxes which could leave a deficit for Plaintiff and Defendant of approximately $150,000.00 which would be marital debt which Plaintiff would be responsible for as much as Defendant. As a consequence, Defendant has not willfully failed or refused to make post separation support payments but has done the best he can under the circumstances.

3. Defendant restates his answer to paragraph 2 above as if fully set forth herein and denies this allegation.

**MOTION FOR REDUCTION OR ELIMINATION OF**

**POST SEPARATION SUPPORT**

Defendant, through counsel, moves the Court for an Order reducing or eliminating Defendant's obligation for post separation support. In support of said Motion, Defendant shows unto the Court as follows:

1. Defendant restates and realleges his Reply to Motion For Contempt above as if fully set forth herein.

2. There has been a material and substantial change of circumstances since December 9, 2002 surrounding Defendant's ability to provide support or pay post separation support. Specifically, the following have occurred:

a) Defendant's income from ASI Silica Machinery for consulting in the amount of $6,000.00 per month terminated January 31, 2003. Defendant has no income for consulting from anybody in the fiber technology field;

b) The fiber technology field is dead. There is no business available at this time;

c) The amount of money being held by Ganda LLC in bank accounts in the amount of $2.65 million is subject to law suits with Yangtze Optical Fiber and Cable Limited with approximately $2.8 million possibly owed which would create a marital deficit of $150,000.00 in

income taxes which Defendant has no ability to pay and which will constitute a marital debt;

d.) Defendant's income is limited to his Corning pension which comes in the form of two checks, one for $1,560.04 and the other for $831.43 per month. From this amount, Defendant, in order to maintain the marital residence, is required to pay a monthly mortgage payment of $997.97.

3. Defendant does not have the income or resources that he used to have and does not have any hidden bank accounts or any other means to pay.

4. During the last two years the stock market has turned downward and Defendant and Plaintiff have lost significant amounts of money in paper value in the stock market and there are no monies for which to pay post separation support.

WHEREFORE, Defendant prays the Court as follows:

1. That Defendant's post separation support obligation be eliminated or reduced by the Court based upon Defendant's current income and ability to pay.

2. That this duly verified Reply To Motion and Motion For Reduction or Elimination of Post Separation Support be treated as an affidavit of Defendant in support of his allegations of fact and claims for relief.

3. For such other and further relief as to the Court may seem just and proper.

THIS the 21st day of April, 2003.

JOHNSON, LAMBETH & BROWN

By: [signature]

CARTER T. LAMBETH,
Attorney for Defendant
232 Princess Street
P.O. Box 660
Wilmington, NC 28402
State Bar No.: 2606

STATE OF NORTH CAROLINA

COUNTY OF NEW HANOVER

## VERIFICATION

JOHN P. EDWARD, first being duly sworn, deposes and says that he is the Defendant in the foregoing pleading, that he has read said pleading and knows the contents thereof, and the same are true except those matters stated therein, and upon information and belief, he believes them to be true.

THIS the 21st day of April, 2003.

[signature]

JOHN P. EDWARD

Sworn to and Subscribed before me

this the 21st day of April, 2003.

Elizabeth Davis

NOTARY PUBLIC

OFFICIAL SEAL
ELIZABETH DAVIS
Notary Public
Pender County
My Commission Expires July 5, 2005

My commission expires: 07/05/05

CERTIFICATE OF SERVICE

It is hereby certified that on this date the foregoing or attached pleading or paper was duly served upon each party to this cause or his attorney of record by:

[X] Hand delivering a copy hereof to each said party or the attorney thereof;

[ ] Depositing a copy hereof, by first class mail, postage prepaid, in the United States Mail

to said party in accordance with the provisions of Rule 5 of the North Carolina Rules of Civil Procedure and addressed as follows:

James W. Lea, III
Lea, Clyburn & Rhine
314 Walnut Street
Wilmington, NC 28401

Carlton S. Prickett, Jr.
Attorney At Law
7 South Fifth Street
Wilmington, NC 28401

THIS the 21st day of April, 2003.

JOHNSON, LAMBETH & BROWN

By: ______________________
CARTER T. LAMBETH
Attorney for Defendant
232 Princess Street
P.O. Box 660
Wilmington, NC 28402
(910) 763-0481
State Bar No. 2606

EXHIBIT
A

ASI SILICA MACHINERY

6404 Independence Avenue
Woodland Hills, CA 91367
Tel (818) 340-2414
Fax (818) 340-3115

January 31, 2003

John P. Edward
President & CEO
Global Fibre Technologies
6324 Guinea Lane
Wilmington, NC 28409-2138

Dear John,

As a followup to our previous communications, the Agreement for sales and marketing services between ASI/Silica Machinery LLC and Global Fibre Technologies which was effective on February 1, 2002 is hereby terminated effective January 31, 2003. As we have agreed, the restriction on representing a company within the six months period after the Agreement in the fourth paragraph shall be interpreted to mean that Global Fibre Technologies the one hand, or John P. Edward individually or Ahmed Mustafa individually, shall not represent any other company offering OVD or VAD core and/or cladding optical fiber manufacturing equipment. So for example, representing a company offering MCVD and draw equipment would not cause this clause to be violated while representing a company offering OVD core and/or cladding equipment would be a violation.

In the meantime, I have contacted Ahmed and will negotiate a deal to keep him involved with LTE and Yang Gu.

Thanks for your efforts and I hope we can do other business together in the future.

Sincerely Yours,

Edward T. Connor

Edward T. Connor
Chief Executive Officer

This Agreement is between ASI/Silica Machinery LLC ( ASI/SM ), of Woodland Hills, California, and Global Fibre Technologies ( GFT ), of Wilmington, North Carolina, whereby GFT will provide sales and marketing services to ASI/SM.

ASI/SM agree to use the services of GFT for the selling of ASI/SM products which currently consist of a preform overclad machine and consolidation furnace, but which may include in future, other machines, equipment and services related to the manufacture of optical fibres.

GFT agrees to provide to ASI/SM sales, and to the extent such are assigned by ASI/SM. and marketing services through the use of efforts reasonably sufficient to fulfill its obligations under this agreement.

The initial term of this agreement shall begin on 1 February 2002, and unless otherwise terminated earlier, and expire on 31 December 2004 with the understanding that the agreement may be renewed and extended by negotiations to be finalized before 31 October 2004. In the event that GFT does not produce sales orders with a dollar value of at least 75% of the amount stated in the business plan, during each period identified in the business plan, then each party shall have the right to either terminate and/or propose modifications to this agreement.

During this agreement, and for a period of six months thereafter, GFT agrees not to represent any other company offering optical fibre manufacturing equipment that competes with, or is complimentary to, that manufactured by ASI/SM, without agreement in writing between GFT and ASI/SM. During this agreement, ASI/SM agrees not to hire any other company to provide services that are the same as those to be provided by GFT under this agreement, without agreement in writing between GFT and ASI/SM.

GFT also understands that it is ASI/SM's intent to develop and broaden its product line to become a full service provider to the optical fibre manufacturer market : and that GFT will provide the sales and will assist in providing marketing and customer services, to the extent such duties are assigned by ASI/SM for these new products and services.

GFT also agrees not to represent other products which create a conflict of interest in carrying out its responsibilities under this agreement, or which may injure ASI/SM's relationship with its customers.

GFT will be responsible for all sales and selected marketing activities reporting directly to the CEO of . ASI/SM. Whereas pricing, specifications, delivery schedules, payment terms and contract decisions remain the responsibility of ASI/SM, these may be delegated to GFT on a customer or other basis. GFT will not appoint any sub or local agent, deal specific or otherwise, without ASI/SM's written approval.

GFT will provide updates on all customer activity in a timely manner, with on-going sales forecasts as appropriate : and copies of all ASI/SM related correspondence, as required.

ASI/SM and GFT will meet at least quarterly for an update on the total overall business activity, and to agree priorities and future action items.

GFT will provide market intelligence and marketing strategy ideas to ASI/SM and develop and implement marketing programs that have been approved by ASI/SM.

GFT will also play a role in customer service, the exact extent to be defined and documented in the near future.

Compensation shall include a flat fee of $ 5,000 per month against invoice, and a commission of 2% on sales, payment of which will be in keeping with payments received from the customer, subject to the

ER

DRQ

exclusions set forth below. Commission is earned at the time the purchase order is accepted by ASI/SM but shall not be paid until ASI/SM receives the applicable payment (s) from the customer and shipment has occurred. However, ASI/SM shall not be obligated to make a commission payment for amounts received from the customer until any performance bond or guarantee, related to the amounts paid by the customer, expires.

In 2002, in the case of specific orders from Sterile and FiberCore/Xtal, received before the date of this agreement, a fee or commission will be negotiated in good faith, at the time of shipment or any further payment, whichever occurs sooner, if GFT has become active at that customer at the request of and agreement with ASI/SM. Likewise, for any activity, through Guangzhou and Global Spring, and at IntelCore.

Also, GFT will be reimbursed promptly, in a manner that is the same as is used with an employee of ASI/SM, for all reasonable travel and expenses related to its ASI/SM activity against invoice and supported with a detailed expense report and receipts. International travel and domestic travel over $ 1,000 must be approved in advance. To the extent that GFT conduct business unrelated to this agreement on such a trip, ASI/SM shall reimburse the expenses on a pro-rated basis.

The existence of this agreement shall be deemed confidential between ASI/SM and GFT. GFT personnel, on ASI/SM business, shall act and be portrayed as being full time ASI/SM employees, respecting ASI/SM dress code and using ASI/SM business cards.

GFT personnel will be bound by Non-disclosure and Confidentiality restrictions similar to those required by ASI/SM employees. The attached Contractor Non-disclosure must be signed by all GFT personnel involved in ASI/SM activities.

ASI/SM or GFT may terminate this agreement if a material breach occurs, provided that the other party is given written notice of such breach and has not corrected such material breach within 30 days of written notice.

GFT shall use good faith efforts to ensure that all representations made by GFT with regard to ASI/SM and its products conform to the specifications and other publicity materials approved by ASI/SM. ASI/SM shall use good faith efforts to include in its contracts with its customer language that states that the contract between ASI/SM and the applicable customer (i) is the complete statement of the agreement between ASI/SM and the customer with regard to the subject matter described in the agreement; and (ii) supercedes any prior discussion, agreements or statements with regard to that subject matter.

This Agreement shall be governed by the State of Delaware.

IN WITNESS WHEREOF, the parties have caused this Agreement to be signed on the respective dates indicated below.

| **Global Fibre Technologies ("GFT")** | **ASI/Silica Machinery, LLC ("ASI/SM")** |
|---|---|
| **By:** John P. Edward | **By:** Edward T. Connor |
| **Name (Print):** JOHN P. EDWARD | **Name (Print):** EDWARD T. CONNOR |
| **Title:** PRESIDENT & CEO | **Title:** CEO |
| **Date:** 4 April '02 | **Date:** April 23 2002 |