# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| Yangtze Optical Fibre and Cable Company Ltd.,<br><br>Plaintiff,<br><br>vs.<br><br>Ganda, LLC, a/k/a Ganda Communications and John Edward,<br><br>Defendants,<br><br>vs.<br><br>Draka Comteq, N.V., Draka Fibre Technology, B.V. f/k/a Plasma Optical Fiber, B.V., Plasma Optical Fibre, B.V., Draka Cableteq USA Corp. and Draka Holdings, N.V.,<br><br>Counterclaim Defendants. | Civil Action No. 04-474ML |

**PLAINTIFF'S FIRST REQUESTS FOR DOCUMENTS AND TANGIBLE THINGS FROM DEFENDANT GANDA, LLC**

Pursuant to Fed. R. Civ. P. 34, plaintiff and counterclaim defendant Yangtze Optical Fibre and Cable Company Ltd. hereby requests that defendant and counterclaim plaintiff Ganda, LLC, a/k/a Ganda Communications produce the documents and tangible things requested for inspection and copying at the offices of Sullivan & Worcester LLP, One Post Office Square, Boston, Massachusetts within 30 days after service of this request or at a time and place mutually agreed to by the parties.

## DEFINITIONS

1. The terms "**Ganda,**" "**you**" and "**your**" mean and refer to defendant and counterclaim plaintiff Ganda, LLC, a/k/a Ganda Communications and its officers, directors, members, employees, agents, partners, corporate parent, subsidiaries, and affiliates.

2. The term "**YOFC**" means and refers to plaintiff Yangtze Optical Fibre and Cable Company Ltd. and includes its officers, directors, agents, employees, partners, corporate parent(s), subsidiaries, and affiliates.

3. The term "**Draka**" means and refer to counterclaim defendants Draka Comteq B.V., Draka Comteq Fibre B.V., Plasma Optical Fibre B.V., Draka Comteq Americans Inc., and Draka Holding N.V. and includes the officers, directors, agents, employees, partners, corporate parent(s), subsidiaries, and affiliates of each.

4. The term "**Edward**" means and refers to defendant John Edward and includes his agents, employees, and partners.

5. The term "**document**" means and refers to any original and every non-identical copy or reproduction of any document or tangible thing within context of Fed. R. Civ. P. 34 in your possession, custody, or control. Different versions of the same document (*e.g.*, copies of a printed document with differing handwritten notations and superseded drafts) are different documents within the meaning of that term as used herein.

6. The term "**concerning**" means referring to, describing, or evidencing.

7. The terms "**and**" as well as "**or**" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these requests all responses that might

otherwise be construed to be outside their scope, or, in other words, to give each request its broadest possible meaning.

8. The terms "**any**", "**all**", and "**each**" shall be construed to mean "any, all and each" and shall be construed as is necessary to make the request inclusive rather than exclusive.

9. The term "**communication**" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) in any manner or form.

10. The term "**person**" means any natural person or any business, legal, or governmental entity, or association.

11. The term "**deliver**" shall mean to, or to cause any person to, by any means and in any form or manner, send, convey, transfer, transmit, or turn over.

12. The term "**Complaint**" means the Complaint filed by YOFC against Ganda in the above-captioned action on November 11, 2004.

13. The term "**Amended Answer**" means the Amended Answer, Counterclaim and Complaint Against Draka Comteq, B.V., Draka Comteq Fibre, B.V. f/k/a Plasma Optical Fibre, B.V., Plasma Optical Fibre, B.V., Draka Comteq Americas, Inc., and Draka Holding, N.V. and Demand for Jury Trial filed by Ganda in the above-captioned action and served on or about January 31, 2006.

14. The term "**sell**" or "**sold**" means to give up or deliver to a person in exchange for something of value (as money).

15. The term "**fiber**" means and refers to any cylindrical dielectric waveguide that transmits light along its axis by the process of total internal reflection. The term fiber includes multi-mode fiber, single-mode fiber and specialty fiber.

16. The term "**operating agreement**" means and refers to an agreement among limited liability company members about the business of the limited liability company and the rights and duties of its members.

**INSTRUCTIONS**

1. Unless otherwise indicated, the relevant time period for each Request is the period from January 1, 1998, through and including the date of your response and any supplementation.

2. In responding to this set of requests, you are required to furnish all documents and tangible things available to you and that are in your possession, custody, or control.

3. These requests require the production of documents and tangible things in the same form and in the same order as they are kept in the usual course of business or organized and labeled to correspond with the particular demands set forth below. If you choose the former method, the documents are to be produced in or with copies of the surface of the boxes, file folders, bindings, or other containers in which the documents are found. The titles, labels, or other descriptions on the boxes, file folders, bindings, or other containers containing the documents are to be left intact.

4. To the extent that you claim that a document is privileged, destroyed, or otherwise non-discoverable, please indicate fully for each document:

a. its date (or an approximate date if the precise date is unknown);

b. the factual basis for the claim of privilege or the reason the document is non-discoverable;

c. each author, recipient, and addressee of such document; and

d. the type of document (*e.g.*, letter, facsimile, memorandum, *etc.*).

5. The past tense shall be construed to include the present tense and vice versa to make the request inclusive rather than exclusive.

6. The singular shall be construed to include the plural and vice versa to make the request inclusive rather than exclusive.

7. All attachments to any requested documents or tangible things that are stapled, paper clipped, or otherwise affixed to any requested documents or tangible things must be produced and must be attached to document or tangible thing to which they are affixed.

8. If there are not responsive documents in your possession, custody, or control that are responsive to any particular request, state "none" in your response.

9. A specific request is not to be interpreted to limit the breadth of a more general request.

**REQUESTED DOCUMENTS AND TANGIBLE THINGS**

1. Any documents that you have ever filed with the Rhode Island Secretary of State's office.

2. Any documents constituting any operating agreement for Ganda.

3. Any documents concerning the formation or origination of the name "Ganda".

4. Any documents constituting any contract or memorandum of understanding, or draft thereof, between Ganda and YOFC.

5. Any documents concerning any contract or memorandum of understanding, or draft thereof, between Ganda and YOFC.

6. Any documents constituting any amendment to any contract or memorandum of understanding, or draft of such amendments, between Ganda and YOFC.

7. Any documents concerning any amendment to any contract or memorandum of understanding, or draft of such amendments, between Ganda and YOFC.

8. Any documents concerning any termination of any contract or memorandum of understanding between Ganda and YOFC.

9. Any documents constituting any communications between Ganda or Edward on the one hand and YOFC on the other hand.

10. Any documents concerning any communications between Ganda or Edward on the one hand and YOFC on the other hand.

11. Any documents constituting any communications between Ganda or Edward on the one hand and Draka on the other hand.

12. Any documents concerning any communications between Ganda or Edward on the one hand and Draka on the other hand.

13. Any documents constituting any communications between Ganda or Edward on the one hand and John Cain on the other hand.

14. Any documents concerning any communications between Ganda or Edward on the one hand and John Cain on the other hand.

15. Any documents constituting any communications between Ganda or Edward on the one hand and Diana Lu or Diana Hojsak on the other hand.

16. Any documents concerning any communications between Ganda or Edward on the one hand and Diana Lu or Diana Hojsak on the other hand.

17. Any documents constituting any communications regarding or referring to YOFC between Ganda or Edward on the one hand and any person on the other hand.

18. Any documents concerning any communications regarding or referring to YOFC between Ganda or Edward on the one hand and any person on the other hand.

19. Any documents constituting any communications regarding or referring to fiber between Ganda or Edward on the one hand and any person on the other hand.

20. Any documents concerning any communications regarding or referring to fiber between or among Ganda or Edward on the one hand and any person on the other hand.

21. Any documents concerning any meetings between Ganda on the one hand and YOFC on the other hand.

22. Any documents concerning any fiber manufactured or sold by YOFC.

23. Any documents concerning any fiber delivered by YOFC to Ganda.

24. Any documents concerning any fiber possessed at any time by Ganda.

25. Any documents concerning any fiber delivered by Ganda or YOFC to any person.

26. Any documents concerning any fiber manufactured or sold by Ganda.

27. Any documents concerning any forecasts or projections of sales or deliveries of fiber by YOFC or Ganda.

28. Any documents constituting any purchase order, bill of lading, invoice, delivery or shipping confirmation, or other transmission document for any fiber delivered or sold to any person by YOFC or Ganda.

29. Any documents concerning any purchase order, bill of lading, invoice, delivery or shipping confirmation, or other transmission document for any fiber delivered or sold to any person by YOFC or Ganda.

30. Any documents constituting any log, record, register, file, journal, memorandum, or similar documentation regarding or referring to the amount of fiber purchased by any person from YOFC or Ganda.

31. Any documents concerning any log, record, register, file, journal, memorandum, or similar documentation regarding or referring to the amount of fiber purchased by any person from YOFC or Ganda.

32. Any documents constituting any financial statement, statement of account, balance sheet, income statement, profit and loss statement, statement of cash flows, or statement of retained earnings regarding Ganda.

33. Any documents concerning any financial statement, statement of account, balance sheet, income statement, profit and loss statement, statement of cash flows, or statement of retained earnings regarding Ganda.

34. Any documents concerning the price of any fiber purchased by any person from YOFC or Ganda.

35. Any documents concerning any fiber that was ordered or shipped from or by YOFC or Ganda and rejected by any person.

36. Any documents constituting any communication with or notice delivered to YOFC or Ganda regarding or referring to any fiber that was ordered or shipped from or by YOFC or Ganda and rejected by any person.

37. Any documents concerning any communication with or notice delivered to YOFC or Ganda regarding or referring to any fiber that was ordered or shipped from or by YOFC or Ganda and rejected by any person.

38. Any documents concerning any commission earned by Ganda.

39. Any documents concerning any payment of commissions from YOFC to Ganda.

40. Any documents concerning any compensation paid from YOFC to Ganda.

41. Any documents concerning any commissions earned by Ganda but unpaid by YOFC.

42. Any documents concerning any money owed by Ganda to YOFC.

43. Any documents concerning any withdrawal, deposit, transfer, or statement of account for any checking, savings, investment or deposit account held or managed in or under Ganda's name.

44. Any documents referenced by Ganda in the Amended Answer.

45. Any documents concerning your denial in the Amended Answer of the allegation in paragraph 7 of the Complaint that "GANDA acted as sales agent for sales of certain YOFC fiber and GANDA was paid a commission on those sales."

46. Any documents concerning your denial in paragraph 18 of the Amended Answer of the allegation in paragraph 21 of the Complaint that "[f]rom the signing of the 1998 Agreement until the termination of the relationship between YOFC and GANDA, of the 676,420.00 kilometers of goods shipped in connection with the YOFC/GANDA contracts, YOFC shipped a total of 549,692.60 kilometers of goods to its customers by way of GANDA's Rhode Island warehouse."

47. Any documents concerning your denial in paragraph 18 of the Amended Answer of the allegation in paragraph 21 of the Complaint that "YOFC credited GANDA for commissions on all sales and deliveries for which it was entitled to a commission."

48. Any documents concerning your denial in paragraph 19 of the Amended Answer of the allegation in paragraph 22 of the Complaint that "GANDA did not remit certain of these payments to YOFC as required by the Agreements."

49. Any documents concerning your denial in paragraph 20 of the Amended Answer of the allegations in paragraph 23 of the Complaint that "for YOFC-manufactured fiber that

North American endusers have received and paid for during the term of the Agreements, YOFC has either (i) directly paid GANDA all commissions and fees owed by way of wire transfer to GANDA's Rhode Island bank account or (ii) credited GANDA for any commissions and fees owed against amounts owing to YOFC."

50. Any documents concerning your denial in paragraph 20 of the Amended Answer of the allegations in paragraph 24 of the Complaint that "GANDA has failed, contrary to its obligations under the Agreements, to remit to YOFC certain monies that GANDA has collected on YOFC-manufactured fiber that has been shipped and paid for."

51. Any documents concerning your denial in paragraph 20 of the Amended Answer of the allegations in paragraph 25 of the Complaint that "GANDA has failed to remit to YOFC, after taking into account any fees and commissions that may be due to GANDA, a total of $2,561,718.09."

52. Any documents concerning Ganda's "mark up" of Fiber as referenced in paragraph 43 of the Amended Answer.

53. Any documents concerning Ganda's "taking title" to Fiber or shipments of Fiber as referenced in paragraph 43 of the Amended Answer.

54. Any documents concerning the allegation in paragraph 44 of the Amended Answer that "[a]s a result of Ganda's efforts, YOFC became established in the North American market with a permanent presence."

55. Any documents concerning the allegation in paragraph 45 of the Amended Answer that "Ganda worked diligently to sell YOFC's fiber optic products in accordance with the terms of said agreements."

56. Any documents concerning the allegation in paragraph 46 of the Amended Answer that "YOFC made no appreciable effort to support Ganda in the North American market."

57. Any documents concerning the allegation in paragraph 46 of the Amended Answer that YOFC "circumvented Ganda's involvement and initiated and/or pursued direct negotiations with several of Ganda's customers with the intention to avoid paying sales commissions due Ganda".

58. Any documents concerning the allegations in paragraph 47 o the Amended Answer that "[b]y letter dated July 18, 202 Ganda advised YOFC that it considered YOFC's conduct to constitute constructive termination of the April 6, 2001 Agreement between the parties."

59. Any documents consisting of the July 18, 2002 letter referenced in paragraph 47 of the Amended Answer.

60. Any documents concerning the allegations in paragraph 48 of the Amended Answer that "[b]y facsimile dated August 5, 2002, YOFC, by and through its corporate representative, acknowledged receipt of Ganda's July 18, 2002 letter and acknowledged its desire to terminate the relationship between YOFC and Ganda."

61. Any documents constituting the letter dated August 5, 2002 and referenced in paragraph 48 of the Amended Answer.

62. Any documents concerning the allegation in paragraph 50 of the Amended Answer that "YOFC repeatedly failed to perform as required under the terms of subject agreements."

63. Any documents concerning the allegation in paragraph 50 of the Amended Answer that "YOFC deliberately disregarded its agreement with Ganda by shipping at least 60,000 kilometers of fiber directly to a Ganda North America client, the Optical Cable Corporation ("OCC"), in 2001 and 2001."

64. Any documents concerning the allegation in paragraph 50 of the Amended Answer that "YOFC failed to pay Ganda the commissions due on these shipments and others."

65. Any documents concerning the allegation in paragraph 51 of the Amended Answer that "YOFC breached this commitment by repeatedly short-shipping Ganda's clients, cause Ganda to lose orders and customers."

66. Any documents concerning each of the allegations in paragraphs 52 and 53 of the Amended Answer.

67. Any documents concerning any "Ganda Client" or "Existing Contracts" as referenced in paragraph 55 of the Amended Answer.

68. Any documents concerning the allegation in paragraph 61 of the Amended Answer that "YOFC had no intention of honoring this Agreement."

69. Any documents concerning the "commissions" referenced in paragraph 55 of the Amended Answer."

70. Any documents concerning the allegation in paragraph 61 of the Amended Answer that "YOFC had already engaged in successful negotiations with at least one of Ganda's clients, OCC, to provide fiber optical products directly to them without the knowledge of Ganda."

71. Any documents concerning the allegation in paragraph 61 of the Amended Answer that "YOFC failed to disclose its solicitation of such clients in order to induce Ganda to execute the April 6, 2001 Agreement."

72. Any documents concerning the allegation in paragraph 62 of the Amended Answer that "YOFC shipped products to OCC without disclosing such shipments to Ganda or paying commissions to Ganda."

73. Any documents concerning the allegation in paragraph 63 of the Amended Answer that YOFC "failed to forward certain required documents to Ganda regarding the sale of products to OCC."

74. Any documents concerning the allegation in paragraph 65 of the Amended Answer that "YOFC's board had already decided, as a matter of corporate policy, to eliminate Ganda as its agent a year prior to execution of the April 6, 2001 Agreement".

75. Any documents concerning the allegation in paragraph 71 of the Amended Answer that "The Draka Defendants and YOFC likewise competed with each other for the sale

of fiber optical products in North America, including the United States, during the time relevant to this action."

76. Any documents concerning the allegation in paragraph 71 of the Amended Answer that "Ganda and the Draka Defendants were competitors for the sale of fiber optical products in the United States market during the time relevant to this action."

77. Any documents concerning the allegation in paragraph 74 of the Amended Answer that "YOFC acquiesced to the Draka Defendants' demand".

78. Any documents concerning the allegation in paragraph 75 of the Amended Answer that "[b]y eliminating Ganda from the market, the Draka Defendants and YOFC conspired to curb downward price pressure on fiber optic sales in the United States market."

79. Any documents concerning the allegation in paragraph 80 of the Amended Answer that "[d]uring the course of the business relationship between Ganda and YOFC, Ganda promoted YOFC's fiber optical products to Lucent Technologies, OCC, BICC/General and others."

80. Any documents concerning the allegation in paragraph 81 of the Amended Answer that "Ganda secured contracts with these customers for the sale of fiber optical products manufactured by YOFC."

81. Any documents concerning the allegation in paragraph 82 of the Amended Answer that "YOFC nevertheless directly solicited Ganda's clients to provide fiber optical products despite the fact that it had previously agreed that Ganda was responsible for negotiating with such clients."

82. Any documents concerning the allegation in paragraph 82 of the Amended Answer that "YOFC did so in part at the request or demand of the Draka Defendants."

83. Any documents concerning the allegation in paragraph 83 of the Amended Answer that "Ganda's contractual relations with its clients were severed as a direct result of YOFC's conduct in directly negotiating with such clients at the Draka Defendant's insistence."

84. Any documents concerning the First Affirmative Defense alleged in the Amended Answer.

85. Any documents concerning the Second Affirmative Defense alleged in the Amended Answer.

86. Any documents concerning the Third Affirmative Defense alleged in the Amended Answer.

87. Any documents concerning the Fourth Affirmative Defense alleged in the Amended Answer.

88. Any documents concerning any delivery of any money from Ganda to Edward.

89. Any documents that any person consulted to draft the document attached hereto as **Exhibit A**.

90. Any documents concerning the "Ganda MM" identified on the document attached hereto **Exhibit A.**

91. Any documents concerning the "Ganda Ch/Savings" identified on the document attached hereto as **Exhibit A.**

92. Any documents concerning the "GFT Ch/Savings" identified on the document attached hereto as **Exhibit A.**

93. Any documents concerning the "Accrued Expenses" identified on the attached hereto as **Exhibit A.**

94. Any documents concerning the "Owing YOFC" identified on the document attached hereto as **Exhibit A.**

95. All documents concerning or identified in Ganda's responses to YOFC's First Set of Interrogatories served herewith.

96. Any statements within the meaning of Fed. R. Civ. P. 26(b)(3) concerning the subject matter of the above-captioned matter.

97. Any documents supplied or to be supplied to any expert whom Ganda expects to call to testify at any hearing or trial held in the above-captioned matter.

98. The curriculum vitae of any expert whom Ganda expect to call to testify at any hearing or trial held in the above-captioned matter.

99. The report of any expert whose opinion Ganda will offer at any hearing or trial held in the above-captioned matter.

100. Any documents that Ganda intends to offer as an exhibit or as evidence in any hearing or trial held in the above-captioned matter.

101. Any documents concerning Ganda's document retention or document destruction policies or procedures in effect during the relevant time period.

102. Any documents concerning any damages that Ganda alleges it has incurred as a result of the allegations in the Amended Answer.

Dated: June 21, 2006

**YANGTZE OPTICAL FIBRE AND CABLE COMPANY LTD.**

Benjamin V. White, Esq., No. 1652
Gordon P. Cleary, Esq., No. 1948
VETTER & WHITE, INCORPORATED
20 Washington Place
Providence, Rhode Island 02903
Phone: (401) 421-3060
Fax: (401) 272-6803
Email: bwhite@vetterandwhite.com
Email: gcleary@vetterandwhite.com

*Of counsel:*

Ira K. Gross
Samual A. Miller
Cherie Bosarge Dutton
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, Massachusetts 02109
Phone: (617) 338-2800
Fax: (617) 338-2880
Email: igross@sandw.com
Email: smiller@sandw.com
Email: cdutton@sandw.com

**Certificate of Service**

I hereby certify that on June 21, 2006, this **Plaintiff's First Request for Documents and Tangible Things from Defendant Ganda, LLC** will be served on counsel for all parties as follows:

James L. Rogers, Jr., Esq.
Leatherwood Walker Todd and Mann, P.C.
Post Office Box 87
The Leatherwood Plaza
300 East McBee Avenue, Suite 500
Greenville, SC 29601-0087

(by first class mail)

Justin T. Shay, Esq.
Cameron & Mittleman LLP
56 Exchange Terrace
Providence, RI 02903

(by first class mail)



{B0527123; 3}

Exhibit A

DEFENDANT'S EXHIBIT

Year End Cash Reconciliation for LLCs

| | | | |
|---|---|---|---|
| Ganda MM | $ 2,004,521.32 | | |
| Ganda Ch/Savings | $ 506,735.18 | | $ 2,511,256 |
| GFT Ch/Savings | $ 152,590.94 | | $ 152,591 |
| | | Total | $ 2,663,847 |

Liabilities

| | | | |
|---|---|---|---|
| Accrued expenses | $ 32,000 | | |
| Owing YOFC | $ 2,985,063 | Total | $ 3,017,063 |
| | | Deficit | ( $ 353,216 ) |

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| Yangtze Optical Fibre and Cable Company Ltd.,<br><br>Plaintiff,<br><br>vs.<br><br>Ganda, LLC, a/k/a Ganda Communications and John Edward,<br><br>Defendants,<br><br>vs.<br><br>Draka Comteq, N.V., Draka Fibre Technology, B.V. f/k/a Plasma Optical Fiber, B.V., Plasma Optical Fibre, B.V., Draka Cableteq USA Corp. and Draka Holdings, N.V.,<br><br>Counterclaim Defendants. | Civil Action No. 04-474ML |

**PLAINTIFF'S**
**FIRST SET OF INTERROGATORIES**
**DIRECTED TO DEFENDANT GANDA, LLC**

Pursuant to Fed. R. Civ. P. 33, Plaintiffs and counterclaim defendant Yangtze Optical Fibre and Cable Company Ltd. hereby requests defendant and counterclaim plaintiff Ganda, LLC, a/k/a Ganda Communications answer the following interrogatories (the "Interrogatories") under oath.

**DEFINITIONS**

1. The terms "**Ganda,**" "**you**" and "**your**" mean and refer to defendant and counterclaim plaintiff Ganda, LLC, a/k/a Ganda Communications and its officers, directors, members, employees, agents, partners, corporate parent, subsidiaries, and affiliates.

2. The term "**YOFC**" means and refers to plaintiff Yangtze Optical Fibre and Cable Company Ltd. and includes its officers, directors, agents, employees, partners, corporate parent(s), subsidiaries, and affiliates.

3. The term "**document**" means and refers to any original and every non-identical copy or reproduction of any document or tangible thing within context of Fed. R. Civ. P. 34 in your possession, custody, or control. Different versions of the same document (*e.g.*, copies of a printed document with differing handwritten notations and superseded drafts) are different documents within the meaning of that term as used herein.

4. The term "**concerning**" means referring to, describing, evidencing, or constituting.

5. The terms "**and**" as well as "**or**" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these requests all responses that might otherwise be construed to be outside their scope, or, in other words, to give each request its broadest possible meaning.

6. The terms "**any**", "**all**", and "**each**" shall be construed to mean "any, all and each" and shall be construed as is necessary to make the request inclusive rather than exclusive.

7. As used herein, when referring to a person, the term "**identify**" shall mean and refer to give, to the extent known, the

a. person's full name,

b. present or last known address, and,

c. (when referring to a natural person) the present or last known place of employment and title.

8. As used herein, when referring to documents, the term "**identify**" shall mean and refer to give, to the extent known, the:

a. type of document;
b. general subject matter;
c. date of the document; and
d. author(s), addressee(s), and recipient(s).

9. The term "**person**" means any natural person or any business, legal, or governmental entity, or association.

10. The term "**Complaint**" means the Complaint filed by YOFC against Ganda in the above-captioned action on November 11, 2004.

11. The term "**Amended Answer**" means the Amended Answer, Counterclaim and Complaint Against Draka Comteq, B.V., Draka Comteq Fibre, B.V. f/k/a Plasma Optical Fibre, B.V., Plasma Optical Fibre, B.V., Draka Comteq Americas, Inc., and Draka Holding, N.V. and Demand for Jury Trial filed by Ganda in the above-captioned action and served on or about January 31, 2006.

12. The term "**sell**" or "**sold**" means to give up or deliver to a person in exchange for something of value (as money).

13. The term "**fiber**" means and refers to any cylindrical dielectric waveguide that transmits light along its axis by the process of total internal reflection. The term fiber includes multi-mode fiber, single-mode fiber and specialty fiber.

14. When an interrogatory calls upon a party to "**state the basis**" of or for a particular claim, assertion, allegation, or contention, the party shall:

a. identify each and every document (and, where pertinent, the section, article, or subparagraph thereof), which forms any part of the source of the party's information regarding the alleged facts or legal conclusions referred to by the interrogatory;

b. identify each and every communication which forms any part of the source of the party's information regarding the alleged facts or legal conclusions referred to by the interrogatory;

c. state separately the acts or omissions to act on the part of any person (identifying the acts or omissions to act by stating their nature, time, and place and identifying the persons involved) which form any part of the party's information regarding the alleged facts or legal conclusions referred to in the interrogatory; and

d. state separately any other fact which forms the basis of the party's information regarding the alleged facts or conclusions referred to in the interrogatory.

**INSTRUCTIONS**

1. In responding to this set of Interrogatories, you are required to furnish all information available to you that is in your possession, custody, or control.

2. The past tense shall be construed to include the present tense and vice versa to make the request inclusive rather than exclusive.

3. The singular shall be construed to include the plural and vice versa to make the request inclusive rather than exclusive.

4. These Interrogatories are continuing and require supplemental responses to the extent required pursuant to Fed. R. Civ. P. 26(e).

5. If you object to any Definition or Instruction or to any of the specific Interrogatories set forth below, the precise grounds for your objection(s) shall be stated with particularity. If any objection rests in whole or in part on a claim of privilege, the privilege

claimed should be stated and all facts and all documents relied upon in support of such claim shall be stated or identified, with particularity.

6. If you object to, or claim a privilege with respect to only a portion of a given Interrogatory, you are requested to answer that portion of the Interrogatory as to which you have no objection or claim of privilege.

7. In the event that you are able to provide only part of the information called for by any particular Interrogatory, you are requested to provide all the information that you can provide and to state the reason(s) for the alleged inability to provide the remainder.

**INTERROGATORIES**

1. Identify any person responding to these Interrogatories as well as each person who was consulted or who provided information for the responses to these Interrogatories.

2. Identify any person who has or who you reasonably believe may have any knowledge of any information concerning any allegation in the Complaint or Amended Answer and for each person state the basis of such knowledge.

3. Identify any person whom you expect to call as a witness at any hearing or trial in this action.

4. Identify any document that you intend to introduce as an exhibit at any hearing or trial in this action.

5. Identify any person whom you expect to call as an expert witness at any hearing or trial of the above-captioned action. For each expert witness identified, provide a detailed

description of the expert's education, qualifications, and experience relevant to the expert's area of expertise, state the subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert witness is expected to testify, and a summary of the grounds for each opinion.

6. Identify all completed sales of any fiber as to which Ganda claims a right to commissions from YOFC but for which you claim Ganda did not receive such commissions, including but not limited to (i) the customer who ordered and paid for the fiber; (ii) the date on which the order was placed; (iii) the date of shipment of the fiber to the customer; (iv) the price per kilometer (or other identifiable pricing unit) that the customer was charged for the fiber; and (v) a description of the type of fiber sold.

7. Identify any uncompleted fiber sales or other transaction not identified in response to Interrogatory No. 6 as to which Ganda claims a right to commissions from YOFC for which you claim Ganda did not receive such commissions, including, but not limited to, (i) the customer who ordered the fiber; (ii) the date on which the order was placed; (iii) the terms and conditions of the order; (iv) the individual representative(s) of the customers who were Ganda's primary contact(s) with regard to the order; and (v) all documents embodying or manifesting the order.

8. Identify the person who delivered the document attached hereto as **Exhibit A** to you and describe the circumstances under which you received that document including, but not limited to, (i) the date that document was received; (ii) the manner in which that document was received (*e.g.*, mail, facsimile, etc.); and (iii) whether any other documents were received with

that document. If there were other documents received with the document attached hereto as Exhibit A, identify those documents.

9. State the basis and the dollar amount of each and every element or component of the damages that you claim to have sustained or incurred as a result of any acts or omissions, as alleged in the Amended Answer. For each element or component, (i) describe in detail the manner in which the amount of alleged damages attributable to such element or component was calculated, estimated, or otherwise determined; (ii) set forth in detail any and all numerical computations used in any way to calculate or to determine the dollar amount of damages attributable to such element or component; and (iii) identify any documents reviewed or consulted in connection with such calculation or determination.

10. Identify all checking, savings, investment or deposit accounts that currently or previously existed under Ganda's name.

Dated: June 21, 2006

**YANGTZE OPTICAL FIBRE AND CABLE COMPANY LTD.**

Benjamin V. White, Esq., No. 1652
Gordon P. Cleary, Esq., No. 1948
VETTER & WHITE, INCORPORATED
20 Washington Place
Providence, Rhode Island 02903
Phone: (401) 421-3060
Fax: (401) 272-6803
Email: bwhite@vetterandwhite.com
Email: gcleary@vetterandwhite.com

*Of counsel:*

Ira K. Gross
Samual A. Miller
Cherie Bosarge Dutton
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, Massachusetts 02109
Phone: (617) 338-2800
Fax: (617) 338-2880
Email: igross@sandw.com
Email: smiller@sandw.com
Email: cdutton@sandw.com

**Certificate of Service**

I hereby certify that on June 21, 2006, this **Plaintiff's First Set of Interrogatories** will be served on counsel for all parties as follows:

James L. Rogers, Jr., Esq.
Leatherwood Walker Todd and Mann, P.C.
Post Office Box 87
The Leatherwood Plaza
300 East McBee Avenue, Suite 500
Greenville, SC 29601-0087

(by first class mail)

Justin T. Shay, Esq.
Cameron & Mittleman LLP
56 Exchange Terrace
Providence, RI 02903

(by first class mail)

____________________



{B0527407; 1}

Exhibit A

plasma optical fibre

Plasma Optical Fibre B.V.
Bedrijventerrein "de Beuk"
Zwaanstraat 1
5651 CA Eindhoven
Nederland
Postbus 1136
5602 BC Eindhoven
Nederland

Telefoon
++ 00 40 2923872
Telefax
++ 00 40 292[illegible]

# FAX

Aan: John Cain (home address)

Van: A. van Beinum

Kopie:

Ref.:

Aantal pagina's: 1 (incl. deze pagina)

Datum: 22-01-99

Betreft: ganda / kopstein     urgent urgent urgent urgent

John,

jan willem visited weeks ago kopstein and booked the order for the first quarter of 1999. We informed you about that and discussed about transport. Until now we are chasing debbie and bob to get the formal order. With no success. Finally we have found out what happened.
After the visit of Plasma Optical Fibre (Jan Willem) Ganda contacted kopstein and promised him a revised quotation with better prices!!!
OCC is confused and does not know how to react: who is in charge?

For the time being kopstein has placed spot orders and does not give any long term commitment. J.W. will visit him again next week and will try to organise things in a proper way.

Please assist as follows:

aaa: kill all commercial activities from Ganda towards our USA market.

bbb: sent a fax to Kopstein in which you tell him that there might be rumours in the market that other people are representing YOF-C but that you can assure him that the only authorised sales organisation for the OCC account is the combined sales from YOF-C and Plasma via the Plasma Optical Fibre Sales and Marketing department represented by Jan Willem Leclerq.

Please contact me about this,
ariën

EXHIBIT
B