# EXHIBIT F

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| YANGTZE OPTICAL FIBRE AND CABLE COMPANY LTD., Plaintiff, v. LUCENT TECHNOLOGIES INC., Defendant. | CIVIL ACTION NO. 03 CV 11413 EFH |

**AFFIDAVIT OF NIELS GADE IN OPPOSITION TO**
**LUCENT TECHNOLOGIES, INC.'S MOTION TO TRANSFER VENUE**

NIELS GADE, first being duly sworn, deposes and says:

1. I am the First Deputy General Manager of Yangtze Optical Fibre and Cable Company Ltd. ("YOFC"), plaintiff in the above-captioned action. I make this affidavit on personal knowledge in connection with YOFC's opposition to the Motion for Transfer of Venue filed by Lucent Technologies, Inc. ("Lucent").

2. YOFC is a corporation with a principal place of business in Wuhan, China. YOFC is engaged in the business of manufacturing and selling optical fiber and cable products. YOFC's annual total revenue over the past several years has been in the range of $200 million or less.

3. YOFC and Draka USA Inc., headquartered in Franklin, Massachusetts, are subsidiaries of Draka Holding N.V., a Dutch company based in Amsterdam. From time to time YOFC employees travel to the United States for business. During these trips, YOFC regularly visits Draka USA's Franklin, Massachusetts headquarters to conduct its business.

4. Sullivan & Worcester LLP has for many years been the Draka entities' outside counsel in the United States and has a longstanding familiarity with the wire and cable business. Accordingly, when YOFC was compelled to come to the United States to enforce its contract rights against Lucent, Sullivan & Worcester LLP was a natural and comfortable choice of counsel. Over the course of the year since this action was filed (and prior to that time, while YOFC attempted to negotiate a settlement with Lucent), YOFC has invested a great deal of time and money in developing its case with Sullivan & Worcester LLP. It would be a material hardship (financial and otherwise) for YOFC to be forced to hire new counsel in Georgia at this juncture.

5. On or about February 9, 2001, YOFC and Lucent entered into a written contract (the "Supply Agreement") that required Lucent to purchase from YOFC, at a stated price, a minimum annual quantity of 100,000 kilometers of 62.5 micron multimode optical fiber (the "Fiber") for each of the years 2001 through 2003. At that time worldwide demand for the Fiber and similar materials was very strong and supply was limited, so Lucent's need to assure itself a committed source of supply at a fixed price was quite understandable. In mid-2001, having satisfied only about 20 percent of its total purchase commitment, Lucent abruptly "walked away" from the Supply Agreement, citing only a change in "market conditions" as its justification. Although it is true that the worldwide optical fiber market experienced a sharp decline in demand in mid-2001, that was a normal business risk Lucent assumed under the Supply Agreement (just as YOFC assumed the risk that the market might become tighter, that raw materials might become more expensive, and so forth). Indeed, the Supply Agreement itself expressly states that "[a]dverse market conditions do not constitute a force majeure condition" that might excuse delay or nonperformance.

6. Prior to initiating litigation, YOFC attempted reasonably to accommodate Lucent's needs by offering to "stretch out" deliveries of the Fiber over a longer period than called for by the Supply Agreement, but Lucent was unwilling to commit to any such arrangement. Accordingly, YOFC had no choice but to institute litigation in the United States to vindicate its contract rights. It selected Massachusetts as a forum that was both convenient and familiar to it and the site of substantial Lucent business operations.

Signed under the pains and penalties of perjury on this __ day of August, 2004.

Niels Gade



{B0318429; 1}